## SPEEDLING v. WORTH COUNTY.

1. **Insane:** MEANING OF TERM: CODE, § 1434. A person who until nine years of age was a bright child, but who afterwards came into such a state of mind as to be denominated, in ordinary parlance, an *idiot*, is an "insane" person, within the meaning of the statutes providing for the care of the insane. See Code, § 1434.

2. **Insane:** CARE OF BY FATHER WITH COUNTY'S ACQUIESCENCE: LIABILITY OF COUNTY. Where a woman was adjudged insane by the commissioners, who issued a warrant to the board of supervisors requiring them to protect and care for her, and she was sent to the hospital, but was not received, but was conveyed to her father, the plaintiff, and left in his custody, and the supervisors directed the commissioners to make such provision for her support as they should find necessary, and the patient was left in the custody of the plaintiff, who cared for her thereafter without any formal appointment by the board of supervisors or the commissioners, but they acquiesced therein, *held* that plaintiff was not bound to render such services because the patient was his daughter, under § 1330 of the Code, and that the irregularities on the part of the county officers were not such as the county could set up to defeat a recovery by plaintiff for the reasonable value of his services.

*Appeal from Worth Circuit Court.*

SATURDAY, DECEMBER 19.

ACTION to recover for the care and support of an insane person. There was a trial without a jury, and judgment was rendered for the plaintiff. The defendant appeals.

*L. S. Butler*, for appellant.

*Miller & Cliggitt*, for appellee.

ADAMS, J.—The patient cared for and supported was one Mary E. Speedling. Her insanity was found by the commissioners of insanity of the defendant county January 29, 1883. On that day they adjudged her to be insane, and issued a warrant to the board of supervisors requiring them to protect and care for her. April 7, 1883, the board author-

ized the commissioners to make such provision for the support of the patient as they should find necessary. There is no direct evidence that the commissioners or the board employed the plaintiff or any one else to care for or support the patient, but the fact is that the plaintiff did care for and support her, and his services in that respect were known to the commissioners and distinctly recognized by them. On December 8, 1883, they reported to the board that the plaintiff was entitled to $1.50 per week for the care and support of the patient. On January 10, 1884, the board acted upon the report, and appropriated the amount specified therein. The plaintiff, however, claimed four dollars per week as a reasonable compensation for his services, and that amount the board refused to pay. The amount allowed by the court in this action appears to have been at the rate of four dollars per week.

The evidence shows beyond question that the amount charged and allowed was not unreasonable, but the defendant denies that it was liable for any amount whatever. It denied in the first place that Mary E. Speedling is or ever was insane. Whether the

**1. INSANE: meaning of of term: Code, § 1434.**

finding of the commissioners that she was insane should be deemed in this proceeding to be conclusive we need not determine. Her mental condition was shown so clearly as to leave no room for controversy. Her age at the time of trial was shown to be thirty-three years. At nine years of age she became affected with epilepsy, and gradually lost her mind. She was until nine years of age a bright child, but for the last few years she has had very little mind, and has not been able to take the slightest care of herself in any respect. In common parlance she would be termed an idiot; but, under our statute providing for the care of the insane, she must be deemed insane. Section 1434 of the Code provides as follows: "The term 'insane,' as used in this chapter, includes every species of insanity or mental derangement. The term 'idiot' is restricted to persons foolish from birth, supposed to be naturally without mind."

It is insisted, however, that, conceding that Mary E. Speed-ling was an insane person within the meaning of the statute, the plaintiff cannot recover, because of his rela-tionship to her. It is shown that he is her father, and the defendant's position is that he is responsi-ble for her care and support, notwithstanding she is an adult. Its position in this respect is based, as we under-stand, upon section 1330 of the Code, which charges the father with the maintenance of his adult children who are unable to maintain themselves. As to whether Mary E. Speedling has property or not there is no evidence, nor do we deem it material. Other considerations and other statu-tory provisions must control. An insane person often needs more than mere maintenance. He often needs restraint, pecu-liar care and treatment. Society often is entitled to be pro-tected and relieved against him. When this is so, the state lays hold upon him and makes him its ward. *Delaware Co. v. McDonald*, 46 Iowa, 170. It claims the right to select, and does select, his custodian. This is so even where he is not maintained at public expense. Code, § 1403.

2. INSANE: care of by father with county's ac-quiescence: liability of county.

Where a person is adjudged insane, and is a fit subject to be treated in the hospital, he should be sent there. Code, § 1403. If not, or if he cannot be received there, and he can-not either with safety to himself or others be allowed to go at liberty, he must be restrained by other means. (See same section.) If he is a private patient, that is, not maintained and treated at public expense, the commissioners of insanity must appoint his custodian. If he is a public patient, they must require the board of supervisors to provide for him. (See the same section.) The patient in question is a public patient, because no one offered to provide for her at private expense. She was sent to the hospital, but was not received. She needed custody, for, as the evidence shows, she was not only sometimes ugly and dangerous, but she could not be trusted for a day to take care of herself. Such being the case, it was the duty of the commissioners to require the

board of supervisors to provide custody and maintenance. This, we think, they did. They issued their warrant to the board, in which they notified the board that they were directed " to properly protect and care for " her. They did not, it is true, use the word " restrain " as the statute contemplates, but the warrant was unquestionably issued in supposed compliance with the statutory provision. The board should, perhaps, in order to have proceeded with strict regularity, have selected a custodian themselves, but they directed the commissioners to provide support. Under the circumstances we must regard this order as meaning that the commissioners should provide what the statute seems to contemplate should be provided directly by them, and that is, that through some suitable person she should be properly " restrained, protected, and cared for." If there was any irregularity in their attempt to comply with the law, it was not such, we think, as would justify us in holding that the defendant county should be allowed to take advantage of it. The sheriff had conveyed the patient to the hospital, and, upon the refusal of the superintendent to receive her, the sheriff conveyed her to her father, the plaintiff, and left her in his custody. The board, either directly or through the commissioners, should have appointed some one as custodian. There is no evidence that they formally made such appointment. That they acquiesced in the plaintiff's assumption of custody, is clear enough. They recognized him as entitled to be paid. We think that under the circumstances we ought to consider what was done as equivalent to an appointment. The case is unquestionably one where the patient should be restrained and cared for at public expense, and the plaintiff unquestionably is a suitable person to act as custodian. The irregularities of the commissioners and board, if any, are small, and should not, we think, affect any one's substantial rights. In our opinion the judgment should be

                              AFFIRMED.