J. A. LYONS, Appellee, v. W. I. LYONS, Administrator, et al.,
Appellants.

**PARENT AND CHILD:** Support of Adult Child. The support of an
1   adult person of unsound mind is not a legal charge against his step-
mother or his half brothers.

**GUARDIAN AND WARD:** Appointment—Fraud. No fraud or imposi-
2   tion on the court necessarily results from the fact that one member
of a legal firm appears as attorney for plaintiff in an application
for the appointment of a guardian for an admittedly mentally in-
competent person, and the fact that another member of the same
firm is caused to be appointed guardian ad litem for such person in
said proceeding.

**NEW TRIAL:** Discretion of Court. An order setting aside a judgment
3   against an incompetent person because existing defenses were
fraudulently or improperly withheld, will not be reversed, in the
absence of a clear showing of abuse of discretion by the court.

*Appeal from Carroll District Court.*—E. G. ALBERT, Judge.

MAY 15, 1923.

PETITION under Code Section 4091, to set aside judgment entered January 3, 1917, in favor of W. I. Lyons, administrator of the estate of Sarah Lyons, deceased, against Isaac N. Lyons, a person of unsound mind, on the ground of fraud in procurement of said judgment. The court set aside the judgment attacked, and reopened the case for a new trial, from which order this appeal is taken. Facts appear in the opinion.—*Affirmed.*

*W. C. Saul* and *W. I. Saul,* for appellants.

*McCrary & Urbany,* for appellee.

ARTHUR, J.—I. Jacob W. Lyons bought and settled on 120 acres of land in Carroll County in the year 1882, with his wife and three children. The children were J. A. Lyons, plaintiff in this action, Emanuel Lyons, and Isaac N. Lyons. The wife of Jacob W. Lyons, mother of J. A., Emanuel, and Isaac, died in the spring of 1883. Jacob W. Lyons married again in 1885. The children of Jacob W. Lyons and Sarah Lyons, his second wife, are the defendants in this action: W. I. Lyons, Harry M. Lyons, Ulrich S. Lyons, Arthur R. Lyons, Charles S. Lyons, and Luverne Lyons. The ancestor, Jacob W. Lyons, continued to live on the farm until his death, in 1907. He died intestate. His widow, Sarah Lyons, continued to live on the farm until her death, in 1915. Isaac was born in 1862. He was of unsound mind since infancy, and continued to be thus afflicted all his life, and died in April, 1919. He lived in the family until his father died, and continued living with his stepmother until her death, and still remained living with some of the defendants on the farm until his death.

Jacob W. Lyons died intestate, seized of 120 acres of land that he settled on in 1882, and possessed of personal property of the value of about $1,574. His estate was administered by Sarah A. Lyons, administratrix. Sarah died in 1915, seized of a one-third interest in the farm of 120 acres, and possessed of personal property of the value of $750. After the death of his father, Isaac continued to live on the farm with his stepmother during her life, a period of about eight years. His stepmother never made any claim against the estate of Isaac for care, board, and keep. On the death of Sarah Lyons, in 1915, W. I. Lyons was appointed administrator of her estate, on April 3, 1915.

In September, 1916, H. M. Lyons brought an action in Carroll district court for appointment of a guardian of the property of Isaac N. Lyons, alleging that Isaac N. Lyons was possessed of personal property "consisting of an interest in rental and profits of real estate," and was the owner of an undivided interest in real estate situated in Carroll County, and that, by reason of his mental condition, said Isaac N. Lyons was "wholly unable and incompetent to manage his affairs and take care of his property," and prayed the appointment of E.

M. Byerly as guardian of his property, and that Isaac N. Lyons be officially declared to be a person of unsound mind.

On the 19th day of October, 1916, the petition for the appointment of guardian came on for hearing, W. I. Saul, attorney, appearing for the petitioner; and W. C. Saul, on motion of plaintiff and by order of the court, was appointed guardian *ad litem* for Isaac N. Lyons, and filed an answer. The court found that "due, legal, and timely service of the original notice of the pendency of this cause has been made on the defendant in the manner and form provided by law." The court found that Isaac N. Lyons "is a person of unsound mind," and "wholly unable and incompetent to manage his affairs and take care of his property," and appointed E. M. Byerly guardian of the property of Isaac N. Lyons, and fixed his bond; and the guardian gave the required bonds and qualified.

On the 19th day of December, 1916, W. I. Lyons, administrator of the estate of Sarah Lyons, deceased, brought an action in the Carroll County district court, making "Isaac N. Lyons, a person of unsound mind, and E. M. Byerly, as his guardian, defendant," alleging that Isaac N. Lyons was a person of unsound mind, that E. M. Byerly was his duly appointed, qualified, and acting guardian, that Isaac N. Lyons had a one-twelfth interest in the west half of the southeast quarter of Section 30, Township 84, Range 34, "the home farm," subject to a lien for improvements made on the land, and that Isaac N. Lyons was justly indebted to the estate of Sarah Lyons for his "keep and clothing for 120 months," and demanding judgment for such keep and clothing at the rate of $20 a month, in the total amount of $2,400.

E. M. Byerly, guardian of Isaac N. Lyons, employed Charles C. Helmer, a practicing lawyer at the Carroll bar, to appear for him, and Helmer, attorney for defendant, filed an answer to the petition, admitting that "Isaac N. Lyons has made his home with the decedent and the decedent's representatives ever since the death of his father, as alleged in the petition," admitting that Isaac N. Lyons was a person of unsound mind and required attention as such, and denying the alleged services of petitioner's estate, and asking judgment in favor of defendant for costs.

On the third day of January, 1917, at the regular January,

1917, term of the Carroll district court, the case came on for trial. W. C. Saul, attorney, appeared for plaintiff, and Charles C. Helmer, attorney, for defendants. The court found that original notice had been served on the defendants, as provided by law. A jury was waived, and the case tried to the court. Evidence being introduced, the court found that the allegations of the petition were sustained, and that:

"Isaac N. Lyons, a person of unsound mind, has been a charge upon the estate of Sarah Lyons for a period of 120 months, up to and including January 2, 1917, and that the reasonable charge for his care, keep, and maintenance is $2,400, with interest at 6 per cent from the 2d day of January, 1917, and the costs of this action."

The court further found that Isaac N. Lyons had a one-twelfth interest in the 120 acres of land, subject to a lien of $6,000 for improvements made thereon by the estate of Sarah Lyons, and directed that a special execution issue, and that said interest of Isaac N. Lyons in and to the land be sold, to satisfy the judgment.

On the 28th day of April, 1917, the judgment for $2,400 rendered on January 3, 1917, was assigned by W. I. Lyons, administrator to H. M. Lyons, Luverne Lyons, U. Sherman Lyons, Arthur R. Lyons, Charles S. Lyons, and W. I. Lyons, in equal shares, said assignees being defendants in the instant case. Execution was issued on the judgment obtained against Isaac N. Lyons, and his interest in the property was sold, and $455.75 applied on the judgment.

II. The purpose and object of the instant action are to set aside the judgment entered in favor of W. I. Lyons, administrator of the estate of Sarah Lyons, deceased, against Isaac N. Lyons, for $2,400, entered on January 3, 1917, and the sale of the interest of Isaac N. Lyons in the old home farm of 120 acres, and to secure the granting of a new trial of the case wherein said judgment was rendered, on the ground that said judgment was procured by fraud practiced upon the court. To support the claim of fraud and imposition upon the court, plaintiff introduced in evidence the notices, pleadings, and record entries in the appointment of E. M. Byerly as guardian of the property of Isaac N. Lyons, and the notices, pleadings, and judgment

entry in the case of W. I. Lyons, Administrator, v. Isaac N. Lyons, and some oral testimony.

In substance, the fraud alleged was that the defendants in the instant action, and especially the children and heirs of Sarah Lyons, deceased, "conspired to defeat the rights of this plaintiff as an heir to the estates of J. W. Lyons and that of his brothers, Emanuel and Isaac N. Lyons, and did cause a petition to be filed in the district court of Carroll County, Iowa, for a guardian to be appointed for Isaac N. Lyons, to wit, E. M. Byerly, defendant herein; and that, at said hearing, W. C. Saul appeared as attorney for plaintiff, and his son, W. I. Saul, appeared as attorney and guardian *ad litem;* and that said attorneys, at said time acting for and against each other in the application for said guardianship, were, in truth and in fact, members of the same law firm, known as Saul & Son, and at the same time were acting at attorneys for W. I. Lyons, administrator of Sarah Lyons, deceased; that, for the purpose of carrying out the plan and purpose to defeat the plaintiff's right as heir of Isaac N. Lyons in said property," they brought an action entitled "W. I. Lyons, administrator of the estate of Sarah Lyons, plaintiff, v. Isaac N. Lyons, a person of unsound mind, and W. M. Byerly, as guardian, defendants," claiming for board and keeping of Isaac N. Lyons; that, in furtherance of said scheme, the plaintiff, W. I. Lyons, administrator, "did have an answer filed;" and that, "upon this record, by representation and inducement, did have the court enter up a judgment against Isaac N. Lyons."

Plaintiff further avers that the claim for board and keeping of Isaac N. Lyons "never existed, and that plaintiff's brother, Isaac N. Lyons, never owed his stepmother on the purported claim on which said judgment was rendered;" that, on the face of the records, there was no validity in the claim, or facts sufficient, pleaded, or proved to establish a judgment against Isaac N. Lyons; but that the "court was misled and improperly induced by representation of said plaintiff, or his attorneys, to enter a judgment;" that "Isaac N. Lyons was a member of the family of his stepmother, and worked and labored for his stepmother, and the value of his said labors was more than sufficient to pay for his board and support;" that the acts of W. I. Lyons, administrator, and his attorney "misled the court, and

caused the court to enter judgment that would not have been entered, had the true facts been known or presented to the court by someone acting in good faith, for the purpose of protecting the rights of Isaac N. Lyons; that the appointment of W. M. Byerly as guardian of the property of Isaac N. Lyons was procured by W. I. Lyons and his brothers for the purpose of unjustly obtaining the property of Isaac N. Lyons;" that Byerly, guardian, "purposely neglected to protect the property rights" of Isaac, and failed to inform the court of the fact that Isaac was a member of the family, and as such lived with his stepmother and worked for her without compensation, and that she received the value of his services; and that, if such facts had been shown, the court would not have rendered judgment against Isaac; that, during all the time Isaac N. Lyons lived with Sarah Lyons, his stepmother, he owned a one-twelfth interest in the home farm of 120 acres; that the land had a rental value of $7.00 per acre; that he had a share also in the personal property of his father's estate; that his father had land in the state of Kansas in which Isaac had an interest in the income, which was received by Sarah Lyons or the defendants in this action, and that no accounting was ever had of the same; that all these facts were not presented to the court at the time the judgment complained of was rendered against Isaac N. Lyons; that Byerly, the guardian, failed to present these facts to the court, and designedly kept them from the court, for the purpose of fraudulently inducing the court to establish an unjust claim against Isaac N. Lyons, and to sell his interest and title in the property without any valid right or claim whatever, and for the further purpose of defeating plaintiff in the instant action in his rights as heir and only living brother of Isaac N. Lyons.

Defendants admitted that Isaac N. Lyons lived at home until the death of his father, and still continued to reside at the home of his stepmother until her death, but averred that, "during all the time and up until his death, he was a person of unsound mind, and had been such from birth or early infancy; that he was incapable of taking care of himself or performing any sustained labor; that he was a constant charge or care upon the said Sarah Lyons during her lifetime." Defendants also

alleged that "all matters sought to be litigated or might have been litigated" in the action wherein judgment was rendered which is sought to be vacated in this action. Defendants' position is that the court had jurisdiction of the subject-matter and of the person of Isaac N. Lyons, and that the judgment entered is the "highest evidence," and cannot be controverted or set aside; that plaintiff, having had his day in court, is barred and estopped from again litigating said matter.

Plaintiff introduced oral testimony of several witnesses as to the value of the 120-acre farm and the rental value. The witnesses placed the value of the land at from $225 to $400 per acre, and the rental value from 1907 to 1911 at $3.00 to $5.00 per acre; in 1910 to 1915, at $5.00 to $6.00 per acre; and in 1918 and 1919, about $10 per acre.

Plaintiff, J. A. Lyons, testified that Isaac was born in 1862, and that, when he (J. A. Lyons) left home, in 1884, Isaac was of unsound mind and remained in that condition; that Isaac was never married; that, at one time, his father was guardian of the property of Isaac, for the purpose of handling a small amount of money that was left from the grandparents' estate; that his brother Emanuel was in the insane asylum from 1885 until his death, and that Isaac was an insane man; that, after his father's death, his stepmother, Isaac, and his half brothers continued to live on the farm; that Isaac lived on the farm until his death, in 1919; that Isaac was "reasonably strong, excepting that he had different troubles at times, stomach trouble, and so on; that he had asthma and troubles at times; that he weighed 130 or 135 pounds."

E. M. Byerly was called by plaintiff, and testified that he had known the Lyons family for 35 years; that he was appointed guardian of Isaac Lyons on the petition of W. I. Lyons; that he read over and swore to the answer which is signed by his attorney, Charles C. Helmer, in the case wherein the judgment complained of was entered; that he swore to the answer before W. I. Saul; that W. I. Saul and W. C. Saul had a law office together; that he employed Charles C. Helmer, lawyer, to appear for him; that he did not remember whether he inquired about Isaac's property or not; that he did not examine the records to find out what he had; that he did not remember

whether he made inquiries about his property or not; that he did not remember whether he was in the court room at the time of the hearing or not.

W. C. Saul, called by plaintiff, testified that he had been a practicing attorney in Carroll since 1895; that he thought he was in the court room when Byerly was appointed guardian of the property of Isaac, but had no independent recollection of the fact; that he was attorney of record in the case of W. I. Lyons, administrator, v. Isaac N. Lyons, and signed the original notice; that he did not remember whether witnesses were sworn in the case or not; that "statements were made by attorneys."

C. C. Helmer, who acted as Byerly's attorney, called by plaintiff, testified that he did not remember just what the situation was; that he knew the Lyons family; that he was acquainted with Byerly; that he did not think there was much of a contest, or he would have remembered it; that he had been a practicing lawyer in Carroll about 20 years; that he was state senator for three years, and a captain in the late war; that he had not knowingly perpetrated any fraud or imposed on the court in any way; that he made sufficient investigation to satisfy himself that the "proceedings were regular, but where I got my information from, I do not know;" that he presumed he had talked to Saul or his son; that he thought they officed together in 1916, and that he probably got some of his information from them; that he did not remember talking to the Lyons people; that he undoubtedly got part of his information from Mr. Saul; that he could not tell now what further investigation he made. It was stipulated that "W. C. Saul and W. I. Saul, father and son, are lawyers, and office together and use the same library."

III. Appellee predicates his claim of fraud and imposition upon the court, as we understand him, principally on the fact that "nowhere was it shown to the lower court that Isaac N. Lyons was a member of the family, and had been all his life;" and it was his position that there is a presumption of law that whatever support was furnished to Isaac N. Lyons by Sarah Lyons, his stepmother, "was gratuitous, and no recovery could be had therefor."

In this connection, counsel for appellee also insist that fail-

ure and omission on the part of Byerly, guardian, and his attorney, Charles C. Helmer, to present to the court, as a defense to the action to recover for support furnished Isaac, that Isaac was a member of the family of his stepmother, and that there was no right of recovery for whatever was furnished him in the way of clothing, keep, and board, constituted fraud and imposition on the court. We think it quite clear from the record that such specific defense was not interposed. Byerly, guardian, in his answer, admitted that Isaac was a person of unsound mind, and required care and attention as such. He denied that services had been rendered by Sarah Lyons to his ward, and demanded judgment for costs.

Counsel argue that it is persuasive that the guardian and his counsel should have considered that there was no lawful claim against Isaac for support, because his stepmother, in her lifetime, had never urged any such claim.

1. PARENT AND CHILD: support of adult child.

While such might be a moral reason, we think it could scarcely be urged as a legal defense. Counsel for appellee seems to take the position that the stepmother and relatives were legally bound to support Isaac in their home, and that Isaac and his property were not liable for his support in the home.

In *Monroe County v. Teller*, 51 Iowa 670, we said:

"The word 'relatives,' as used * * * must be construed to mean the persons from whom the county may collect such claims; that is, 'persons legally bound' for the support of the insane person. A father is not legally bound to support his adult children at common law, nor under the statutes of this state."

See, also, *Speedling v. Worth County*, 68 Iowa 152.

Counsel argue that the family relation and blood ties existing created such a condition that Isaac's property should not be charged with his support. There might well be in a family moral obligation to refrain from charging an unfortunate child for support under such conditions as here existed, but there was no legal obligation resting on the stepmother and half brothers to support Isaac, an adult, of unsound mind. *Monroe County v. Teller*, supra.

Counsel strenuously urge that the court should not have entered the judgment against Isaac or his property until sworn

· evidence in open court had been produced. It is not clear whether oral testimony was produced to prove the claim or not. W. C. Saul, attorney for plaintiff in the action on the claim, testified:

"I do not remember whether witnesses were sworn or not. Statements were made by attorneys."

Again, it is insisted by counsel that W. C. Saul, who was attorney for H. M. Lyons in securing the appointment of Byerly as guardian of the property of Isaac N. Lyons, and W. I.

**2. GUARDIAN AND WARD: appointment: fraud.**

Saul, who was appointed by the court as guardian *ad litem* for Isaac, were partners, and that such appointment of guardian *ad litem* was brought about by the elder Saul, and was improper, and an imposition on the court. The most that appears in the record on this point is in a stipulation that "W. C. Saul and W. I. Saul, father and son, are lawyers, and office together, and use the same library." Whatever business relation existed, if any, between W. C. and W. I. Saul, no harm to Isaac came from W. I. Saul's acting as guardian *ad litem* in the action for appointment of guardian. Without doubt, Isaac was of unsound mind, incapable of transacting business, and a proper subject for guardianship; nor does it appear that Byerly, who was appointed, was not a proper person to act as guardian. Appellee says that Byerly was selected by W. I. Lyons as part of a plan to defeat plaintiff's rights as heir of Isaac, and that, in furtherance of the scheme, the action to establish the claim for support of Isaac was brought by W. I. Lyons, administrator, against Isaac and his guardian, Byerly. It does not appear in the record that W. I. Lyons made even a suggestion as to the appointment of a guardian, or who should be appointed as such guardian. But if he had brought about in some way the appointment of Byerly, there would have been nothing wrong about it. In *McCormick v. McCormick,* 109 Iowa 700, we said:

"True, the attorneys agreed upon the permanent guardian, but that they had a right to do. It may be that plaintiff's attorney could not consent to the appointment of a guardian, as he appeared, not only in the capacity of regular attorney, but was also appointed guardian *ad litem.* * * * These facts fall short of establishing fraud in the procurement of the original judg-

ment and order. Plaintiff herein did nothing that would justify even a suspicion of covin.''

We find no fraud in the appointment of the guardian.

IV. The record does not disclose the exact ground on which the lower court based his order setting aside the former judgment and granting new trial. The strongest reason urged in the court below for setting aside the former judgment against Isaac for maintenance and support, and urged on this appeal to sustain the order granting new trial, is, in substance, that Isaac, having lived in his father's family and, after his father's death, in his stepmother's family, without any claim's being made by either of them, his father or his stepmother, for any support, must have been considered and treated as a member of the family, rendering some service and receiving his support. We think the court must have based his order on such ground. The record fairly discloses that such defense was not presented by pleading or evidence in the original case of W. I. Lyons, Administrator, v. Isaac N. Lyons. Also, after his father's death, Isaac became the owner of an undivided one-twelfth interest in the farm on which his stepmother, Isaac, and the other children continued to live.

3. NEW TRIAL: discretion of court.

The showing made for a new trial was not strong, but we are reluctant to interfere with the discretion of the trial court. We cannot say, as we must, to warrant reversal of the order of the trial court, that there was abuse of discretion in making said order. We have said, in substance, so frequently that citation of authorities is not necessary, that granting a motion or petition for a new trial is a matter so peculiarly within the discretion of the trial court that we will not interfere with such orders, unless it appear that such discretion has been abused.

Results in affirmance of the case.—*Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.