(April 26, 1906.)

STATE, Respondent, v. MILT SIMES, Appellant.

[85 Pac. 914.]

CRIMINAL LAW—RAPE—LUNATIC CANNOT CONSENT—LUNATIC AS WITNESS—COMPETENCY OF WITNESS—CREDIBILITY OF WITNESS—LEADING QUESTIONS.

1. Under section 5957, Revised Statutes, which provides that persons "of unsound mind at the time of their production" cannot be witnesses, a person who can apprehend the obligation of an oath and is capable of giving a fairly correct account of the things he has seen or heard is competent as a witness, although he may be afflicted with some form of insanity.

2. The examination of the person offered as a witness for the purpose of testing his competency should be made with special reference to the scope of inquiry and subject matter about which the witness is to testify.

3. Incapacity to give intelligent and legal consent to the commission of an act does not necessarily imply incapacity to thereafter correctly and truthfully narrate the facts constituting the commission of the act.

4. The fact that the state accuses a defendant with rape in having had carnal knowledge of a female who was at the time of unsound mind and incapable of giving consent does not *per se* establish the incompetency of such female to testify against the accused.

5. ID.—In such case the accused may object to the witness testifying on the grounds of incompetency, and the court will examine into and pass upon the grounds of the objection in the same manner and to the same extent as if made against the competency of any other witness.

6. Where objection is made as to the competency of a witness to testify, the court should examine the witness for the purpose of determining his competency, and may call and examine other witnesses touching such question.

7. After the court has determined that a person is competent to testify as a witness, the credibility of the witness immediately becomes a question to be determined by the jury.

8. The action of the trial court in permitting leading questions is largely discretionary, and is properly exercised in the allowance of such questions in the examination of a feeble or simple-minded person.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District for the County of Latah. Hon. Edgar C. Steele, Judge.

The appellant, Milt Simes, was convicted of the crime of rape committed on a female of unsound mind, and sentenced to imprisonment in the state penitentiary for a term of six years. From the judgment and an order denying his motion for a new trial be appealed. *Judgment affirmed.*

William M. Morgan, and Albert L. Morgan, for Appellant.

When the mental deficiency of a witness is brought to the attention of the court, it becomes the duty of the court, of his own motion, to propound questions to the witness tending to determine his qualifications or lack of qualifications to testify. (*People v. Bearnal,* 10 Cal. 67, citing *People v. McNair,* 21 Wend. 609.)

Since the prosecutrix is the only witness who testified to any material facts against the defendant, we are confronted with the proposition that a defendant has been convicted upon the uncorroborated testimony of one who is alleged in the information to be by statute prohibited from testifying.

The trial court abused the discretion which the law has vested in him in cases of this kind, by permitting the use of leading questions. (*Coon v. People,* 99 Ill. 368, 39 Am. Rep. 28.)

The evidence, even conceding that the prosecutrix was a competent witness, is insufficient upon which to base the verdict and judgment, and the trial judge should have granted a new trial for that reason. His refusal to do so was reversible error. (*State v. Baker,* 6 Idaho, 496, 56 Pac. 81; *State v. Anderson,* 6 Idaho, 706, 59 Pac. 180.)

**J. J. Guheen,** Attorney General, **Edwin Snow** and **Philip Hindman,** for Respondent.

There is nothing arbitrary about a statutory rule in this or any other state prohibiting a witness of unsound mind from testifying. (1 Wigmore on Evidence, secs. 492, 501.)

Statutes providing that persons of unsound mind shall be incompetent (to testify) are generally held merely declaratory, and such persons are excluded in those jurisdictions only when unsound of mind to a degree that would exclude them at common law. (30 Am. & Eng. Ency. of Law, 934, citing *P. & W. Ry. Co. v. Thompson,* 82 Fed. 720, 27 C. C. A. 333; *Cannady v. Lynch,* 27 Minn. 435, 8 N. W. 164; *City of Guthrie v. Shaffer,* 7 Okla. 459, 54 Pac. 698; *Clements v. McGinn* (Cal.), 33 Pac. 920.)

A verdict will not be set aside on the ground that the witness was incompetent, where it appears from the record that he has sufficient capacity to understand the nature and obligation of an oath, and his evidence shows him to be intelligent. (*Wolfforth v. State,* 31 Tex. Cr. 387, 20 S. W. 741; 50 Century Digest, "Witnesses," sec. 99, citing *District of Columbia v. Armes,* 107 U. S. 519, 27 L. ed. 618, 2 Sup. Ct. Rep. 840; *Walker v. State,* 97 Ala. 85, 12 South. 83; *Gore v. State,* 119 Ga. 418, 100 Am. St. Rep. 182, 46 S. E. 671.)

The question of a preliminary examination to test the competency of a witness is entirely discretionary with the trial court. (*Robinson v. Dana,* 16 Vt. 474; *Holcomb v. Holcomb,*

28 Conn. 177; *People v. Baldwin,* 117 Cal. 244, 49 Pac. 186; *Pittsburg & Western Ry. Co. v. Thompson,* 82 Fed. 720, 27 C. C. A. 333.)

Leading questions will be permitted in the case of witnesses whose weakness of intellect precludes their testifying in the ordinary way. (*People v. Bowers* (Cal.), 18 Pac. 660; 50 Century Digest, "Witnesses," sec. 854, citing *Huffman v. Cauble;* 86 Ind. 591; *Brassell v. State,* 91 Ala. 45, 8 South. 679; *State v. Bauerkemper,* 95 Iowa, 562, 64 N. W. 609; *Ellis v. State,* 25 Fla. 702, 6 South. 768; *McLean v. City of Lewiston,* 8 Idaho, 472, 69 Pac. 478; *Armstead v. State,* 22 Tex. App. 51, 2 S. W. 627; *Ham v. State* (Tex. Cr. App.), 78 S. W. 929; *Welsh v. State,* 60 Neb. 101, 82 N. W. 368; *State v. Burns,* 119 Iowa, 663, 94 N. W. 238.)

AILSHIE, J.—The accused in this case was charged by information of the public prosecutor with the crime of rape, in that he did, at a time and place designated, "have sexual intercourse with a female not his wife, to wit, one Bessie Jones, being then and there a female not the wife of the said defendant and incapable through lunacy and unsoundness of mind of giving legal consent." Section 6765, Revised Statutes, as amended by act of February 7, 1899 (Sess. Laws 1899, p. 167), defines rape. as follows: "Rape is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, under either of the following circumstances: . . . . Second. Where she is incapable through lunacy, or any other unsoundness of mind, whether temporary or permanent, of giving legal consent."

At the trial the state produced as its first witness the prosecutrix, Bessie Jones, and after she was sworn, the attorney for the defendant called the attention of the court to the fact that the witness about to be examined by the state was the prosecutrix, and that the information charged her with lunacy and unsoundness of mind, and counsel thereupon requested the court "to propound such questions to her as will determine her ability to understand them." To which request the court replied: "The court refuses; you may do so."

Counsel for defendant replied: "We don't wish to; we except." This action of the court is the principal error assigned. The prosecuting attorney thereupon proceeded to examine the witness and defendant's counsel cross-examined her, from all of which evidence as the same occurs in the record, it is quite clear that the witness, though very simple and childlike, was competent to testify. Section 5957, Revised Statutes, provides that: "The following persons cannot be witnesses: 1. Those who are of unsound mind at the time of their production," etc.

It is to be observed that the unsoundness of mind required to disqualify such witness must exist "at the time of their production" for the purpose of giving testimony. The statute does not undertake to prescribe or define the amount or degree of mental unsoundness that must exist in order to disqualify the witness, but the reason for the existence of such a statute should be invoked, and we interpret that reason to require that the witness should have some apprehension of the obligation of the oath, and that he shall be capable of giving a fairly correct account of the things he has seen or heard; and this test should be made with special reference to the field of inquiry and character of the subject on which the witness is to give testimony. It would be clearly unfair to test the competency of the witness on the particular subject on which he is insane, when in fact he would not be called upon to testify on that subject, and, indeed, he might be perfectly rational and clear on other subjects. We think, as was said in *Clements v. McGinn,* 33 Pac. 923, that "An insane person is competent to be a witness if he understands the nature of an oath, and has sufficient mental power to give a correct account of what he has seen or heard." (*District of Columbia v. Armes,* 107 U. S. 519, 27 L. ed. 618, 2 Sup. Ct. Rep. 840; 1 Wigmore on Evidence, secs. 492-497; *Wright v. Southern Express Co.,* 80 Fed. 85; *Pittsburg & W. Ry. Co. v. Thompson,* 82 Fed. 720, 27 C. C. A. 333; *Cannady v. Lynch,* 27 Minn. 435, 8 N. W. 164; 2 Elliott on Evidence, secs. 751-759; *City of Guthrie v. Shaffer,* 7 Okla. 459, 54 Pac. 698; *Walker v. State,* 97 Ala. 85, 12 South. 83; Underhill on Crim-

inal Evidence, secs. 202, 203, 30 Am. & Eng. Ency. of Law, 2d ed., 934.) For a learned and interesting case stating the modern English rule, see *Regina v. Hill,* 5 Cox C. C. 259; S. C., 2 Den. & P. 254.

This brings us to the question as to whether or not the fact that the state charges by the information that the female on whom the offense was committed was, at the time, incapable of giving legal consent, by reason of unsoundness of mind, of itself, disqualifies her as a witness or raises the presumption that she is incompetent to testify. Since no conviction can be had without the state establishing beyond a reasonable doubt that the female was of unsound mind at the time of the commission of the alleged offense and every presumption must be resolved in favor of the accused until overcome by legal and competent evidence, it would seem to follow as a logical conclusion that the prosecutrix, when produced as a witness should, in the eye of the law, stand on the same footing as any other witness, sharing the same credit for sanity and competency as is *prima facie* accredited to all persons. The defendant in such case, if he is going to enter a plea of not guilty and stand trial, must thereupon proceed upon the presumption which the law accredits him. He cannot go to trial on the plea that he is innocent, and the moment the state produces a witness against him interpose an objection based upon the theory that the state has already established by its pleading one of the material and essential facts against him. When a witness is produced, it is a right and privilege accorded to the adverse party to object to the examination of such witness upon the ground of incompetency to testify. The question of competency is clearly one of law, and must be determined by the court. (Rev. Stats., sec. 7883; Wigmore on Evidence, sec. 497; 2 Elliott on Evidence, sec. 753; Underhill on Criminal Evidence, sec. 203; *Cannady v. Lynch, supra; Holcomb v. Holcomb,* 28 Conn. 177.) There is no fixed or established rule for determining such question. It seems, however, to be the usual practice, and, we think, the proper and orderly way to proceed, for the court to examine the witness for the

purpose of ascertaining his condition of mind and ability to truthfully and correctly narrate the facts concerning which he is called to testify; and, in the determination of this fact, it may often be found proper and necessary to call other witnesses to testify. After the court has determined that the witness offered is competent to testify, the question of his credibility immediately becomes a matter for the consideration and determination of the jury. The mental condition of a witness as manifested by him on the witness-stand almost invariably influences the jury as to the weight they will give his testimony. The manner in which a witness tells his story; the advantages he appears to have had for gaining accurate information on the subject, the accuracy and retentiveness of his memory; his capacity for consecutive narration of acts and events; his apparent frankness and intelligence, and numerous other considerations—all go to make up the sum total of credibility that the jury will give to the evidence of any particular witness. It should be borne in mind, too, that the mental capacity of the female to give her consent to the act for which the defendant is prosecuted is a question of fact for the jury to determine along with all the other questions of fact submitted to them by the evidence. Counsel for appellant argues, however, that if the prosecutrix was so weak-minded and mentally unsound as to render her incapable of giving an intelligent assent to the violation of her person, she must have been, for the same reason, incapable of giving competent testimony concerning the commission of that act. While there is apparent reason for such an assumption, and in many cases it would undoubtedly be true, we do not think the position tenable as a rule nor that the latter conclusion necessarily follows the existence of the former fact. It would seem that a female, although of mature years, and fully developed physically, might be so far insane and mentally deranged as not to realize or appreciate the impropriety or effect of the illicit act, and still might be capable of giving a substantially correct and truthful statement of the occurrence and conditions under which it took place. Incapacity to give intelligent and legal con-

sent to an act does not necessarily imply incapacity to thereafter correctly narrate the facts constituting the commission of the act. Counsel for appellant cite *Lee v. State*, 43 Tex. Cr. App. 285, 64 S. W. 1047, as authority for their position, but an examination of that case at once discloses the fact that it is based on a statute materially different from ours. The Texas statute under consideration in that case provided that no one could testify who was in an "insane condition of mind when the events happened of which they are to testify."

Where timely objection is made to a witness testifying on the grounds of incompetency, it is unquestionably the duty of the court to make such examination as will satisfy him as to the competency or incompetency of the witness to testify in the case and thereupon to rule on the objection accordingly. In this case the court refused to do so, but allowed the witness to testify, which act amounted to a ruling that the witness was competent. While the defendant was entitled to have his objection examined into and passed upon by the court, it is apparent to us that he has suffered no injury or loss of right on account of the action of the court (*Wright v. Southern Express Co., supra*), for the reason that the record discloses such facts as convince us that the witness was competent to testify. The credibility of the witness was properly left to the jury, and has been determined by them. The prosecutrix was corroborated in several material respects. It was shown that she was an unmarried woman; pregnancy and parturition were established as well as the defendant's acquaintance and somewhat intimate association with her. It is also shown that both before and after his arrest he had made the statement that he was willing to marry her. Other damaging statements were also shown.

Appellant complains of the action of the trial court in permitting the prosecutor to examine the witness, Bessie Jones, by leading questions. There was no error in permitting leading questions asked this witness. In *McLean v. City of Lewiston*, 8 Idaho, 472, 69 Pac. 478; this court held that the allowance of such questions was a matter addressed to

the sound discretion of the court, and unless abused, would not afford grounds for reversal. And there are particular and peculiar cases, of which this is one, where the exception to the general rule is essential and is necessarily invoked. (See discussion and note in 1 Wigmore on Evidence, secs. 769-779.)

We think the judgment in this case should be affirmed, and it is so ordered.

Stockslager, C. J., and Sullivan, J., concur.