# STATE, Respondent, v. WALTER COSLER, Appellant.

[228 Pac. 277.]

CRIMINAL LAW—INFORMATION—SUFFICIENCY OF—INSTRUCTIONS—RAPE —PERSON OF UNSOUND MIND—CHALLENGE TO PANEL—JURORS— DISQUALIFICATION OF — FAILURE TO CHALLENGE — EVIDENCE—WITNESS—COMPETENCY OF—DISCRETION OF COURT—QUESTIONS OF LAW AND FACT—MISCONDUCT OF COUNSEL.

1. The action of the trial court in disallowing a demurrer to an information will not be inquired into on appeal from the judgment unless the question is presented in a bill of exceptions.

2. All the instructions must be considered and construed together, and though an individual instruction, standing alone, would appear to be improper, if the instructions as a whole correctly state the law, the judgment will be affirmed.

3. An instruction, which singles out and emphasizes any particular fact in evidence and suggests the effect or weight to be given such fact, is properly refused.

4. It is not error to refuse to give a requested instruction in any event, where the subject matter thereof is fully and fairly covered by the instructions of the court.

5. Instructions should not be argumentative, nor should they be so worded as to indicate either the court's view of the facts or to permit the jury to erroneously infer the view of the court with respect to the facts.

6. The reputation for chastity of a female cannot be impeached by evidence that an act of sexual intercourse was committed upon her person while she was under the age of eighteen years.

7. A challenge to the panel is an objection to all the jurors and can be founded only upon a material departure from the forms prescribed in the drawing and return of the jury and for the intentional omission to summon any of those drawn.

8. The inclusion of the names of women among those selected by the board of county commissioners for jury service is not a ground for challenge to the panel.

9. The disqualification of any individual juror for jury service is not a ground for challenge to the panel.

10. A person is subject to challenge for cause for a want of any of the qualifications prescribed by law to render a person a competent juror.

11. A party who fails to interpose a challenge for cause with respect to a juror, who may be disqualified, cannot complain that he was forced to exhaust a peremptory challenge to remove such person from the jury.

12. The competency of a witness to testify should be determined when the witness is produced, and, in determining the question of competency, the court is not bound by the allegations of the information.

13. The competency of a witness is a question of law for the court.

14. The misconduct of counsel does not ordinarily authorize the reversal of a judgment when the evidence is so conclusive that the jury could not have properly reached any other verdict.

APPEAL from the District Court of the Fourth Judicial District, for Gooding County. Hon. Henry F. Ensign, Judge.

Appellant was convicted of the crime of rape. *Affirmed.*

W. T. Stafford, for Appellant.

Argumentative instructions are erroneous. (*State v. Love* (Okl.), 150 Pac. 913; *People v. Holden,* 13 Cal. App. 354, 109 Pac. 497; *People v. Merritt,* 18 Cal. App. 58, 122 Pac. 840; *State v. Fleming,* 17 Ida. 486, 106 Pac. 305; *State v. Marren,* 17 Ida. 766, 107 Pac. 993; 16 C. J., p. 1036, sec.

2476; 13 Cyc. 797, citing cases; 1 Sackett, Instructions, 161, sec. 195.)

Unchastity of party may be shown for the purpose of impeachment. (*State v. Anderson*, 6 Ida. 706, 59 Pac. 180; *State v. Trego*, 25 Ida. 625, 138 Pac. 1124.)

Those who are of unsound mind at the time of their production for examination cannot be witnesses.

Incapacity to give intelligent and legal consent to the commission of an act does not necessarily imply incapacity to thereafter truthfully narrate the facts constituting the commission of the act. (*State v. Simes*, 12 Ida. 310, 9 Ann. Cas. 1216, 85 Pac. 914.)

A. H. Conner, Attorney General, and James L. Boone, Assistant, for Respondent.

In order to review the action of the trial court in denying a demurrer to an information, it is necessary to save an exception and incorporate the exception and ruling of the court in a bill of exceptions. (*State v. Maguire*, 31 Ida. 24, 169 Pac. 175; *State v. Crawford*, 32 Iowa, 165, 179 Pac. 511; *State v. Ford*, 33 Ida. 689, 197 Pac. 558; *State v. Snook*, 34 Ida. 403, 201 Pac. 494; *State v. Ricks*, 34 Ida. 122, 201 Pac. 827; *State v. Becker*, 35 Ida. 568, 207 Pac. 429; *State v. Moodie*, 35 Ida. 574, 207 Pac. 1073.)

Incapacity to give intelligent and legal consent to the commission of an act does not necessarily imply incapacity to thereafter correctly and truthfully narrate the facts constituting the commission of the act. (*State v. Sims*, 35 Ida. 505, 206 Pac. 1045; *State v. Hyde* (Okl.), 221 Pac. 787; *State v. Simes*, 12 Ida. 310, 9 Ann. Cas. 1216, 85 Pac. 914; *Lanier v. Bryan*, 184 N. C. 235, 26 A. L. R. 1488, 114 S. E. 6.)

It is not error on the part of the trial court to refuse to advise the jury to acquit the defendant. (*State v. Sullivan*, 34 Ida. 68, 199 Pac. 647.)

Instructions which are subject to the criticism that they are argumentative do not necessarily constitute grounds for reversible error. (17 C. J., sec. 3689, p. 341.)

Instructions shall be read as a whole. (*State v. Neil*, 13 Ida. 539, 90 Pac. 860, 91 Pac. 318; *State v. Nolan*, 31 Ida. 71, 169 Pac. 295; *State v. Petrogalli*, 34 Ida. 232, 200 Pac. 119; *State v. Dong Sing*, 35 Ida. 616, 208 Pac. 860.)

An entire charge on a particular point must be read together. (*People v. Bernard*, 2 Ida. 178, 10 Pac. 30; *Loy v. State*, 26 Wyo. 381, 185 Pac. 796; *Johnson v. State*, 86 Tex. Cr. 276, 216 S. W. 192.)

A new trial ought never to be granted notwithstanding some mistake or misdirection by the judge, provided the revisioning court is satisfied that justice has been done, and that upon the evidence no other verdict could properly have been found. (*State v. Marren*, 17 Ida. 766, 107 Pac. 993; *State v. Dong Sing, supra.*)

It is not error to refuse instructions requested by either the state or the defendant, where the substance of the refused instruction is covered by another instruction given by the court. (*State v. Reel*, 19 Ida. 463, 113 Pac. 721; *State v. O'Neil*, 24 Ida. 582, 135 Pac. 60; *State v. Steers*, 12 Ida. 174, 85 Pac. 104; *State v. Fondren*, 24 Ida. 663, 135 Pac. 265.)

WM. E. LEE, J.—An information was filed in the district court for Gooding county charging Walter Cosler with the crime of rape, committed upon the person of one Elizabeth Walton, who had been prior to the alleged crime a student of the State School for the Deaf and Dumb at Gooding. It was alleged that Elizabeth Walton was incapable, through unsoundness of mind, of giving legal consent to the act of sexual intercourse. Appellant Cosler was convicted and appeals from the judgment. A number of assignments of error are made.

Appellant interposed a demurrer to the amended information. The demurrer was disallowed. The record does not contain any bill of exceptions, presenting this question. The action of the trial court in disallowing a demurrer to an information will not be inquired into on appeal from the judgment unless the question is presented in a bill of excep-

tions. (*State v. Maguire,* 31 Ida. 24, 169 Pac. 175; *State
v. Ford,* 33 Ida. 689, 197 Pac. 558; *State v. Snook,* 34 Ida.
403, 201 Pac. 494; *State v. Moodie,* 35 Ida. 574, 207 Pac.
1073.)

It is next contended that the court erred in giving ten
certain instructions requested by the state, and in failing
to give seven certain instructions requested by appellant.
In the trial of this case, the state requested the court to
give seventeen different instructions, while appellant asked
the giving of twenty-three separate instructions. The court
actually gave forty-two instructions. It would serve no
useful purpose to set forth the instructions given at the
request of the state and those requested by appellant which
the court refused to give. Certain of the individual in-
structions, standing alone, would appear to be improper,
but we cannot say that, taking all the instructions together,
any error is found that would justify a reversal. (*State v.
Sayko,* 37 Ida. 430, 216 Pac. 1036.) Certain of the instruc-
tions are somewhat argumentative, but appellant was not
prejudiced on that account. The verdict is clearly sustained
by the evidence and the jury could not properly have re-
turned any other verdict. (*State v. Marren,* 17 Ida. 766,
107 Pac. 993; *State v. Dong Sing,* 35 Ida. 616, 208 Pac.
860.) It is claimed that instructions 13 and 14, especially,
invade the province of the jury and constitute an expression
of opinion by the court as to the facts proven. Although
these two instructions might be improved upon, counsel is
unduly critical. To the extent that these two instructions
might be construed as an expression of the opinion of the
court, instruction No. 40 fully advised the jury that the
determination of the facts was wholly within its province
and that the court had not attempted to suggest what the
facts were. Reasons, illustrations and examples contained
in certain of the instructions might properly have been
omitted, but we fail to see that appellant was prejudiced.

Appellant especially complains of the refusal of the court
to give the instruction requested calling the particular at-
tention of the jury to the fact that Elizabeth Walton was

at the time of the alleged crime an employee of the institution and that such fact should be considered with respect to her ability and her mental condition. The evidence covers more than 250 type-written pages, and it would be manifestly improper to single out any particular fact and suggest its effect. (*State v. Pettit*, 33 Ida. 326, 193 Pac. 1015.)

Complaint is made that the court should have instructed the jury to confine itself to finding and determining the mental capacity of the girl at the date of the alleged crime. This was fully covered in instruction No. 2. It is certainly not error to refuse to give a requested instruction where the subject matter is fully and fairly covered by an instruction given by the court. (*State v. Sayko, supra; State v. Petrogalli*, 34 Ida. 232, 200 Pac. 119.)

Appellant complains of the refusal of the court to instruct the jury that "defendant could not be convicted upon the uncorroborated evidence of Elizabeth Walton alone, where her reputation for chastity or truthfulness have been impeached; and . . . . if you find from the evidence, that Elizabeth Walton has been impeached either as to truthfulness or chastity, and that defendant is not corroborated by other evidence, then and in that event your verdict should be for the defendant. . . . . " The statute provides a method for impeaching a witness. (C. S., sec. 8038.) No attempt was made to impeach the reputation of Elizabeth Walton for truth or chastity. An act of sexual intercourse was shown to have been had with the witness several years before. This was not admitted for the purpose of impeachment. Counsel for appellant stated that it was for the purpose of showing whether the girl knew the nature of the act. It was admitted for this purpose alone, and the jury was instructed that such evidence was admitted not for the purpose of discrediting the testimony of the girl but solely for the purpose of determining her mental condition. (*State v. Anthony*, 6 Ida. 383, 55 Pac. 884; *State v. Anderson*, 6 Ida. 706, 59 Pac. 180; *State v. Hammock*, 18 Ida. 424, 110 Pac. 169; *State v. Henderson*, 19 Ida. 524,

114 Pac. 30; *State v. Fong Loon,* 29 Ida. 248, 158 Pac. 233;
*Boeck v. Boeck,* 29 Ida. 639, 161 Pac. 576; *Lagonte v. David-
son,* 31 Ida. 644, 175 Pac. 588.) And while it is ordinarily
proper, in the trial of a rape case, to give an appropriate
instruction on the question of corroboration, the court did
not err in refusing to give the requested instruction because
it does not state the law. (*State v. Anderson, supra; State
v. Short, ante,* p. 446, 228 Pac. 274.) Conceding even that
the requested instruction constituted a correct statement of
the law, reversible error was not committed in refusing to
give it because the testimony of the girl was corroborated
by direct evidence; her reputation for truth and chastity
had not been impeached; and the circumstances surround-
ing the commission of the offense clearly corroborated her
statements.

Error is assigned because of the refusal of the court to
give three requested instructions, defining an idiot, a luna-
tic, an insane person, unsoundness of mind, comparing
these terms, and that "all persons are of sound mind who
are neither idiots, lunatics nor affected with insanity; . . . .
and unless Elizabeth Walton was . . . . either an idiot, a
lunatic, or was affected with insanity . . . . it will be your
duty to acquit the defendant." It would appear that in a
case of this nature there are at least three prime facts for
the jury to determine. One is that an act of sexual inter-
course has been committed, another is the person who com-
mitted the act, and still another is whether the girl was in-
capable through "lunacy or other unsoundness of mind of
giving legal consent." In order that one be incapable of
giving legal consent, she must, through lunacy or other un-
soundness of mind, be incapable of understanding the nature
of the act and of giving intelligent consent thereto. (*State
v. Simes,* 12 Ida. 310, 9 Ann. Cas. 1216, 85 Pac. 914; *State
v. Morrow,* 13 Ga. App. 189, 79 S. E. 63.) The jury, there-
fore, would not have been assisted by definitions of an
idiot, or an insane person, or a lunatic. It is difficult to
understand how a comparison of these terms would have
assisted them. We cannot say, as a matter of law, that the

term "unsoundness of mind," as it is here used, "is synony-mous with insanity," or that it "indicates a total dep-rivation of sense, that is, to be of unsound mind means that a person must be an idiot, a lunatic or an insane person, totally deprived of sense. . . . . " We are of the opinion that these requested instructions do not state the law and that they were properly refused.

Instructions should go no further than to inform the jury of the propositions of law pertinent to the questions involved. They are given. for the purpose alone of aiding the jury to arrive at a correct determination of the facts submitted to them. Of necessity, the extent of the instruction varies in different cases. They should not be argumentative, nor should they be so worded to indicate either the court's view of the facts or to permit the jury to erroneously infer an indication of the view of the court. While the instructions in this case could have been improved upon and were too long, considering them all together, the jury was not misled by the instructions given.

Appellant complains that six women were on the jury panel for the regular trial term at which he was tried. For this reason he interposed a challenge to the panel, which was denied by the court. Some of the women were successfully challenged for cause, while others were passed for cause. Appellant exhausted all his peremptory chal-lenges. Error is assigned because of the denial of the challenge to the panel. The board of county commissioners prepares jury lists. (C. S., sec. 6524.) It selects those whose names are placed .in the jury-box, from which, upon the order of the district judge, regular jury panels are selected. A challenge to the panel is an objection to all the jurors returned (C. S., sec. 8914) ; and can be founded only on a "material departure from the forms prescribed in re-spect to the drawing and return of the jury . . . . , or on the intentional omission . . . . to summon one or more of the jurors drawn." (C. S., sec. 8915.) The drawing and return of the jury is provided by law (C. S., sec. 6534), and have nothing to do with the preparation of the jury

list by the board of county commissioners. In this case the inclusion of the six women on the regular jury panel was not affected by the "drawing and return of the jury," and since a challenge to the panel can be founded only on a material departure from the forms prescribed in respect to the drawing and return of the jury or an intentional omission to summon any of the jurors drawn, it cannot be based upon the action of the board of county commissioners in selecting the persons whose names go into the jury-box from which the panel is drawn. The inclusion of the names of disqualified persons among those selected by the board of county commissioners for jury service is not a ground of challenge to the panel. The disqualification of an individual juror for any cause is not a ground for challenge to the panel. "Further, sec. 7819 (C. S., sec. 8915) prescribes the only ground for challenge to the panel, and the disqualification of a juror is not given in said section as a ground for such challenge." (*State v. Silva*, 21 Ida. 247, 120 Pac. 835.) The minutes of the court show that appellant challenged certain of the women jurors for cause, but the ground of the challenge does not appear. We cannot presume that the trial court committed error, and therefore we cannot presume that the challenges for cause interposed to the women jurors were based upon disqualification for jury service. The court allowed certain of the challenges for cause and disallowed others. The jury was passed for cause with two women on the jury, neither woman having been challenged for cause. This would certainly indicate that the challenge was based upon some ground other than disqualification. The record in this case does not contain any bill of exceptions or stenographic report of the *voir dire* examination of the jury, and all we know of the *voir dire* examination has been gleaned from the minutes of the court. From the record, therefore, we cannot say that error was committed in the selection of the jury. The jury that found the verdict consisted of men only.

It is suggested in appellant's brief that in both the opening and closing arguments the prosecuting attorney referred to the fact that the defendant did not take the stand and testify. There is no record of what the prosecuting attorney said in either argument, but there is contained in the reporter's transcript an objection, by appellant, to a remark by the prosecuting attorney "with relation to the defendant not presenting any evidence in his behalf. . . . . '' The court sustained the objection and told the jury the fact referred to should not be considered by them. It was improper for the prosecuting attorney to make the remark which he is credited with having made, and every trial lawyer knows that such an admonition by the court is not ordinarily sufficient to erase from the minds and memories of the jurors such improper remarks. It is probably not too much to say that the remark of the court rather tended to impress the fact upon the minds of the jurors. It would not be proper in this case, however, to reverse the judgment because of this misconduct. The evidence is such that the jury could not have reached any other verdict than that of guilty. The misconduct of the prosecuting attorney, though flagrant, does not justify the reversal of a judgment where the evidence is so conclusive that the jury could not have been misled. (*State v. Douglass,* 35 Ida. 140, 208 Pac. 236.)

When Elizabeth Walton was called as a witness, appellant objected "on the ground that she is disqualified from testifying under C. S., sec. 7936, subdivision 1 . . . . 'Those who are of unsound mind at the time of their production for examination' . . . . cannot be witnesses." Appellant then argued and now claims that the "information stated that she was at the time of production for examination a person of unsound mind." We fail to find any such statement in the information. The objection was overruled, and appellant insists that error was thereby committed. While appellant contends that this question, because of the statement which he claims was contained in the information, is not governed by the rule announced in *State v. Simes, supra,* and later adhered to in *State v. Sims,* 35 Ida. 505, 206 Pac.

1045, we are of the opinion that this identical question was raised and passed upon in those decisions, and we have no desire to and see no necessity for disturbing the rule announced. When the objection was interposed the court caused the girl to be examined to determine her competency to testify; and after such examination by both the state and the defense, the court permitted her to testify.

A female, who is incapable, through lunacy or other unsoundness of mind, of giving legal consent to an act of sexual intercourse, is not necessarily incompetent as a witness, under C. S., sec. 7936, which provides, among other things, that "Those who are of unsound mind at the time of their production for examination" cannot be witnesses. The competency of a proffered witness to testify is a question of law for the court, and should be determined when the witness is produced. The court is no more concluded by the allegation of unsoundness of mnd in an information, in determining the proffered witness' competency to testify, than is the jury in determining whether, as a matter of fact, the female was at the time alleged of such unsoundness of mind as to be incapable of giving legal consent to the act of sexual intercourse. All persons are not mentally equal. Unsoundness of mind is a relative term. For a person to be capable of giving legal consent to an act of sexual intercourse, such person must of necessity have some knowledge of the results that naturally flow from such acts; and that the unlawful act offends against the moral law and results more or less in social ostracism. Inability to understand and appreciate such results and their effect renders one incapable of giving an intelligent consent to the act. On the other hand, there is no valid reason why one who is capable of receiving and relating impressions should ordinarily be prohibited from testifying. And the statute, in prohibiting persons of "unsound mind" from testifying, must, of necessity, have included those only who are incapable of receiving and relating impressions. It is known to almost everyone that while children of tender years are able to relate what they have seen and heard, they are not capable of giving

39 Idaho.—34

consent to sexual intercourse, for the reason that they have no knowledge or appreciation of the consequences of the act. And while Elizabeth Walton, deaf and dumb, afflicted physically and mentally from youth, might be able to testify that appellant had indulged in an act of sexual intercourse with her, at the same time she might have known little or nothing of such an act and its consequences; and could not, therefore, give legal consent to the act. As was said by Mr. Justice Ailshie, in the able opinion of this court, in the Simes case, "It would seem that a female, although of mature years, and fully developed physically, might be so far insane and mentally deranged as not to realize or appreciate the impropriety or effect of the illicit act, and still might be capable of giving a substantially correct and truthful statement of the occurrence and conditions under which it took place."

We have examined the other alleged errors and find that they are without merit. Their discussion would unduly lengthen this opinion.

Counsel complains that the sentence was extreme, appellant having been sentenced to serve from fifteen to thirty years in the penitentiary. No comment upon the severity of the sentence is necessary. Counsel has so presented the question that we can grant no relief other than to reverse the judgment and grant a new trial. The record does not justify a reversal. On the whole, appellant had a fair trial. He was ably represented. The evidence was such, however, that the verdict of the jury could not have been other than guilty. As a matter of fact, the record shows that at the outset, appellant entered a plea of guilty, but was later permitted to withdraw that plea and enter a plea of not guilty.

Judgment affirmed.

McCarthy, C. J., and Budge, J., concur.

Dunn and William A. Lee, JJ., did not sit.