## THE STATE v. J. T. SMITH, Appellant.

### Division Two, May 14, 1907.

1. **WITNESS: Deaf Mute.** A deaf and dumb girl, the prosecutrix in a trial of defendant for rape, is a competent witness for the State.

2. ———: **Expert: Bias.** The assistant superintendent of the Deaf and Dumb Institute where prosecutrix was educated, is peculiarly fitted to communicate with her by signs and to interpret her testimony to the jury; and whether or not he was unduly biased in her favor is a matter for the determination of the trial court, and if there is no ground for charging ·the court with a lack of proper discretion in the matter, the verdict will not be interfered with on that assignment.

3. ———: **Rape: Deaf Mute.** The taking of a deaf and dumb girl, seventeen years old, in intelligence and playful conduct like a child less than eleven years of age, to a hotel, and there registering her as the wife of defendant, and having her assigned to the same room and bed with defendant, and deflowering her during the night, is rape.

Appeal from Barry Circuit Court.—*Hon. F. C. Johnston,* Judge.

AFFIRMED.

*Herbert S. Hadley,* Attorney-General, and *N. T.* Gentry, Assistant Attorney-General, for the State.

(1)   (a)   No error was committed in permitting Prof. D. C. McCue to act as interpreter, during the examination of the prosecutrix, who was deaf and dumb. After the officers of the Deaf and Dumb Institute learned that one of their pupils had been mistreated while trying to find her way home, Prof. McCue was sent to Barry county to ascertain the facts and to lay them before the prosecuting attorney. This was simply the duty of said officers, and their action in this matter was not only proper but highly commendable. But, the fact that an officer does his duty, and does it promptly, is no proof that he is prejudiced. In a murder case, where the interpreter was a witness for the people and was the deputy sheriff who had arrested the defendant, it was held that it was proper for him to act as an interpreter. People v. Ramirez, 56 Cal. 533; Railroad v. Shenk, 131 Ill. 283. And the United States Court of Appeals decided that a sister of the plaintiff, who also testified as a witness for the plaintiff, was competent to act as an interpreter for some of the plaintiff's witnesses. Barber v. Odasz, 57 U. S. App. 129. The fact that McCue was a friend of prosecutrix and her instructor at the Fulton school did not disqualify him. In a seduction case, the prosecuting witness being a mute, the court held that a lady friend of hers was a suitable person to act as interpreter; and the fact of their friendship did not disqualify her. State v. Burns, 78 N. W. 681; Swift v. Applebone, 23 Mich. 252. (b) The Supreme Court of Connecticut said that, even though the prosecutrix, who was deaf and dumb, could communicate her ideas in writing, it was proper for the trial court to procure the services of a teacher from a deaf and dumb school to interpret her testimony. State v. DeWolf, 8 Conn. 93; State v. Howard, 118 Mo. 143;

Whart. Crim. Ev., sec. 375; State v. Weldon, 39 S. C. 322. (2) In arriving at the question of whether or not defendant was guilty, the jury had a right to take into consideration the mental strength of prosecutrix, also the facts that she was seriously afflicted, could not talk, could not hear, and could make almost no noise. State v. Cunningham, 100 Mo. 382; Stephen v. State, 11 Ga. 239; State v. Atherton, 50 Iowa 191; Ebuhart v. State, 134 Ind. 651; State v. McDonough, 104 Iowa 6; State v. Huff, 164 Mo. 480; State v. Williams, 149 Mo. 496; People v. Griffin, 117 Cal. 583; State v. Hann, 73 Minn. 140. Resistance in each case is expected to be only such that the assaulted female is capable of giving, considering the time, place, surroundings, her strength and that of her assailant. 4 Elliott on Evidence, sec. 3097; Underhill on Crim. Evid., sec. 407; Ransbottom v. State, 144 Ind. 257.

GANTT, J.—The prosecution in this case was commenced by an information filed by the prosecuting attorney of Barry county, duly verified, on August 22, 1905, wherein he charged the defendant with rape on Ada Stotts, a female, seventeen years of age, in Barry county, in the month of June, 1905.

The information is sufficient in form and substance and it is unnecessary to reproduce it.

The defendant was arrested and duly arraigned at the September term, 1905, of the Barry Circuit Court, and on his application the cause was continued to the February term, 1906. At said February term the defendant was put upon trial and convicted and his punishment assessed by the jury at fourteen years in the penitentiary. In accordance with the verdict, the defendant was sentenced to the penitentiary, and from that sentence he has appealed to this court.

The State's evidence tended to prove that Ada Stotts, the prosecuting witness, is deaf and dumb and

has been thus afflicted ever since she was two years old. At the time of the commission of the crime charged, June 8, 1905, she was seventeen years old; although in intelligence, she was more like a child. The mother of prosecutrix testified that she was like a child eight years old in intelligence; the assistant superintendent of the Deaf and Dumb Institute at Fulton testified that she was like a child eleven years old in intelligence, and the physician, who examined her, gave it as his opinion that she was like a child nine or ten years old in intelligence. Although seventeen years old, prosecutrix would follow her mother around like a small child, and would sit down, dress a doll and play with a doll by the hour. For some months prior to June, 1905, prosecutrix had been attending the Deaf and Dumb Institute at Fulton; and, at the close of the school year, she returned to her home. Prosecutrix was then living with her father and mother southwest of Stotts City, a little town in the western part of Lawrence county. She was accompanied from Fulton by a teacher and other pupils of that school as far as Springfield; there she was placed in charge of the passenger conductor on the Frisco railroad. Prosecutrix had a ticket to Sarcoxie, which was the station where her relatives were to meet her, but by a mistake she did not change cars at Pierce City, and was carried on to Ritchey, in Newton county. At Ritchey the conductor took prosecutrix into the depot and placed her in charge of the station agent, she being a stranger and never having traveled over that road before. Prosecutrix was then crying, frightened and suffering from a severe headache. The station agent took prosecutrix to the Sanders hotel, and introduced her to Mrs. Sanders, the landlady. Prosecutrix took dinner and supper at the hotel, and met the defendant who was boarding there. Defendant represented to Mrs. Sanders and also to the station agent that he was an old friend of the Stotts family, and

offered to take care of prosecutrix; he did not tell
prosecutrix that he was acquainted with her people.
During the afternoon, defendant took prosecutrix to a
drug store, where he purchasd some ice cream for her,
also some candy and medicine. At defendant's sug-
gestion, prosecutrix ate the ice cream and candy and
took the medicine; this was behind the partition at the
back of the drug store. Then defendant kissed prose-
cutrix and tried to take improper liberties with her,
but she struck his hand. Defendant, who seems to have
been a good scribe and who talked to prosecutrix by
writing, persuaded prosecutrix to go to Monett, to have
a good time, and she consented to go with him. Ac-
cordingly, the two left Ritchey about 7:30 p. m., and
arrived at Monett about nine of the same evening. Be-
fore leaving the hotel at Ritchey, the defendant
changed his clothes, put on a clean collar and tie and
told Mrs. Sanders that he was going to a party out in
the country. Mrs. Sanders accused him of intending to
go off on the train with prosecutrix, but defendant de-
nied it, saying that he was going to a party. Mrs.
Sanders said, "You are old enough to see after that
girl; you could take care of her and see that she gets
home all right, but I don't know whether you will do
it or not." On arriving at Monett, defendant and pros-
ecutrix went straight to the hotel, where the defendant
registered under the name of "Mr. and Mrs. Law-
rence." Defendant asked Mr. Swartzell, the proprie-
tor of the hotel, for a room and was assigned to room
twelve, which was a front room. Mr. Swartzell went
with defendant and prosecutrix up to that room, light-
ed a lamp for them, and soon returned with a pitcher
of water. Prosecutrix testified that she was surprised
to see that there was only one bed in the room; that
she sat down and began to cry, and wrote to defendant
that she wanted to go home. Defendant told her to
take off her clothes and get in bed, and she, being

frightened, did so. Defendant looked angry and tried to compel prosecutrix to yield to him, but she wrapped herself up in a sheet and tried to bite him. Finally, defendant forcibly had sexual intercourse with her, and repeated the same during the night. Prosecutrix made as much noise as she could, but on account of a goiter, her throat and voice were very weak. Prosecutrix and defendant remained in that room all night, arose the next morning about eight and went down to breakfast. After eating they took the train for Pierce City, where prosecutrix was met by her father and cousin, and the defendant was arrested. In the course of a few days, Dr. King made an examination of prosecutrix and found that the hymen had been ruptured and that her parts were badly bruised and swollen; and the mother testified to the injured condition of prosecutrix. The State's evidence also showed that the town of Monett is on the line between Barry and Lawrence counties, but that the Swartzell hotel is situated in Barry county.

The defendant admitted having sexual intercourse with prosecutrix in the hotel at Monett on the night in question, but denied using any force or threats. Defendant introduced some physicians who testified that some deaf and dumb persons are equally as intelligent as persons of the same age, not so afflicted. He proved by Mr. Swartzell that he noticed nothing unusual in the conduct of either the defendant or prosecutrix the night they came to his hotel, and nothing unusual at the table the next morning. Mr. Swartzell also testified that he and his wife sat out on the front porch that night till 10:30 and heard no noise in the defendant's room, which was a front room of the second story. This witness further testified that he observed nothing unusual in this bedroom the next morning; that the sheets were wrinkled about as they ordinarily are. He further stated that, although he saw prosecutrix that night and the next morning, and waited on her at the

table the next morning, he did not know that she was deaf and dumb.

The court instructed the jury fully on all the points of law arising under the evidence in the case and as they are such as have often met the approval of this court it is deemed unnecessary to burden this opinion with their reproduction. No brief having been filed in this court on behalf of defendant, we have been compelled to examine the record in the light of the motions for a new trial and in arrest of judgment.

1. As already said, the information sufficiently charges the offense of rape. [State v. Dilts, 191 Mo. l. c. 667.]

2. No error was committed by the court in permitting the prosecuting attorney to state to the jury in opening the case that he expected to show to the jury that the knowledge of the prosecutrix is limited, that she compares in information with a girl between ten and eleven years of age, but if there had been, this is not assigned as error in the motion for new trial.

3. It was assigned as a ground for new trial that the court erroneously permitted Prof. McCue of the State Deaf and Dumb Institution at Fulton, to act as interpreter of the prosecutrix. That he was peculiarly fitted to communicate with the prosecutrix by signs and interpret her evidence to the jury is not controverted, but it is said that he was unduly biased in her favor. This was a matter for the determination of the circuit court and we see no ground for charging that court with any want of proper discretion in the matter.

That the prosecutrix was under our laws a competent witness was settled in State v. Howard, 118 Mo. l. c. 143 and 144; 5 Am. and Eng. Ency. Law (1 Ed.), 119, and cases cited; State v. Burns, 78 N. W. 681; Swift v. Applebone, 23 Mich. 252.]

4. As to the other objections to testimony we

have carefully read the record and find no reversible error.

5. This record reveals a deplorable picture of human depravity. The ruining and deflowering of the poor deaf and dumb girl under the facts and circumstances detailed in evidence was rape within the meaning of our laws and the jury were fully justified in reaching the verdict they did.

The judgment is affirmed. *Fox, P. J.,* and *Burgess, J.,* concur.