## Jim Batterton v. The State.

### No. 4208. Decided January 22, 1908.

#### 1.—Local Option—Insanity—Charge of Court—Burden of Proof—Witness.

Upon trial of a violation of the local option law, where there was nothing in the examination of the State's witness to indicate insanity, and the court properly left the issue of insanity of the witness for the jury to determine, and charged the jury that the burden rested upon the defendant to overcome the presumption that every man is sane until the contrary appears by preponderance of the testimony that the witness was insane, there was no error.

#### 2.—Same—Competency of Witness.

Upon trial of a violation of the local option law, where testimony was offered attacking the State's witness' sanity, the court correctly charged that the degree of insanity required to render a person incompetent to testify was such defect of reason from disease or derangement of the mind as to render such person incapable of receiving a sound mental impression of the transaction regarding which he is called upon to testify; likewise, he was incompetent if he could not retain and impart such impression when received from such cause, or understand the nature and obligation of an oath.

Appeal from the County Court of Grayson. Tried below before the Hon. J. W. Hassell.

Appeal from a conviction of a violation of the local option law; penalty, $100 and sixty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of mental capacity of the witness cited the cases in opinion.

RAMSEY, Judge.—Appellant was convicted of violating the local option law, and his punishment assessed at a fine of $100 and sixty days imprisonment in the county jail.

There are several questions raised in the record, but the only one of sufficient importance to require attention is that raised by defendant's bill of exceptions No. 2, complaining of the general charge of the court, that the burden of proof is on the defendant to show the insanity of the witness Strickland.

The Assistant Attorney-General has filed in the case a very able brief, which we adopt as the opinion of the court. It is as follows: "There was but one witness for the State, who testifies clearly and intelligently in a consecutive and narrative form to all the circumstances surrounding the purchase of the whisky from the appellant.. There are a great number of questions raised in the case as to the sufficiency of the indictment, and in regard to several special charges requested. The State, however, contends in this case that there is but one point raised in the case that requires attention, and this is covered in defendant's bill of exceptions No. 2 (Tr. p. 25 of the record), complaining of the general charge of the court, that the burden of proof was on the defendant to

show the insanity of the witness Strickland. Upon an inspection of the testimony of the witness Strickland, as given in the trial of this case, there was nothing whatever to suggest his insanity. In detailing the particulars of the offense, he gave a very clear and intelligent account of the same and there was nothing in his testimony that would suggest to the court that the witness was incompetent or of unsound mind. The defendant offered several witnesses to prove that the witness Strickland was not of sound mind. The State in rebuttal offered several witnesses to show that he was of sound mind. The question here presented, perhaps has not been decided by this court and is one of first impression.

Mr. Elliott in his work on Evidence, vol. 2, sec. 750, says: "A witness who has mental disqualification is one who has not the capacity to receive, to record and to recall correct impressions, and to testify intelligently concerning them." . So that if the witness has these mental disqualifications his testimony should be excluded. And in section 751 this language is used: "There is now no hard and fast rule making an insane person incompetent as there seemed to be formerly, but much is left to the discretion of the court to be exercised according to the nature, degree and effect of the insanity and circumstances of the particular case. It is elementary that all persons are sane and presumed to be sane and competent until the contrary appears. In section 752, Mr. Elliott says: "The opposite party must cause the incompetency on the ground of insanity to appear, and this may be shown by voir dire examination or by outside testimony, or during the course of the witness' own testimony." And in section 753, it is said, "The court decides as a preliminary question as to whether a witness is so insane as to be incompetent, yet the trial judge can permit him to testify and leave it to the jury to reject the testimony if the witness is deemed incredible."

And Mr. Wharton, in his work on Criminal Evidence, 8th edition, sec. 370, says: "A man may have delusions and yet be capable of narrating facts truly, and the existence of such delusions on his part at the time of the trial goes to his credit and not to his competency. Evidence of mental disturbance at the time of the event narrated can be received to affect credibility. An inquisition of lunacy may be prima facie evidence of incompetency, but does not exclude it if upon hearing the court finds that the witness understands the nature of an oath and the fact of which he speaks. When there is no inquisition, the burden is on the party disputing sanity." Our statute, article 768, Code of Criminal Procedure, provides, as follows: "Insane persons who are in an insane condition of mind at the time when they are offered as witnesses, or who were in that condition when the events happened of which they are called to testify, as well as other persons who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath, are absolutely incompetent to testify." Under the provisions of this article of the code and tested by this article, we do not think that the court was authorized to declare that this witness was incompetent.

There was nothing in the testimony that showed that the witness Strickland was in an insane condition of mind at the time he was offered as a witness, nor nothing which showed that he was in this condition of mind when the event happened of which he was called to testify, nor was there anything that indicated in the examination of this witness on the stand; that he did not possess sufficient intellect to relate transactions with respect to which he was being interrogated.   See Lopez v. State, 30 Texas Crim. App., 487; Lee v. State, 43 Texas Crim. Rep., 285; 64 S. W. Rep., 1047; Thompson v. State, 33 Texas Crim. Rep., 472; Bishop on Criminal Law, sec. 1122; and see also 87 Am. Dec., 774.

We deduce from the above principles the following:   There being nothing in the examination of this witness to indicate insanity, the court properly left it to the jury to determine that issue.   Second, that the law presumes every man sane until the contrary appears.   Third, the burden rests upon the party attacking this presumption of sanity to overcome the same.   Therefore, if we are correct in these deductions, the court properly charged the jury that the burden was on the defendant to show by a preponderance of testimony that the witness was insane.

It should be further stated that the court charged the jury that if the witness Strickland was insane, upon whose testimony the conviction rests, they would find a verdict for the defendant.   As to what constitutes insanity, and as to the degree of insanity required to render a person incompetent to testify, the court instructed the jury as follows:   "The degree of insanity required under the law to render a person incompetent to testify, is such defect of reason from disease or derangement of mind as to render such person incapable of receiving a sound mental impression of the tranaction regarding which he is called upon to testify, or if he had the capacity to receive such mental impression, then such defect of mind as would render it impossible for him to retain and impart such impression, or such defect of reason, from disease or derangement of mind, as would render it impossible for him to know and understand the nature and obligation of an oath."

We think this was a very clear submission of the issue and it is not subject to the criticism made by counsel for appellant.

Finding no error in the record, the judgment of the court below is affirmed.

*Affirmed.*