JOHN COKELEY v. THE STATE.

No. 5485.   Decided April 21, 1920.

**Rape—Insanity—Witness—Corpus Delicti—Confession—Insufficiency of the Evidence.**

Where, upon trial of rape, the indictment charged that the same was committed upon a mentally unsound woman, it was incumbent upon the State to show: first, that the act of intercourse occurred as alleged; and second, that prosecutrix was mentally unsound at the time, and as the law rendered her incompetent as a witness and the State failed to prove such sexual intercourse except by the confessions of the defendant, the *corpus delicti* was not established, where the surrounding circumstances attending the confession, did not show such intercourse, and the conviction cannot be sustained. Following: Kugadt v. State, 38 Texas Crim. Rep., 681, and other cases.

Appeal from the District Court of Hill.   Tried below before the Honorable Horton B. Porter.

Appeal from a conviction of rape; penalty: imprisonment for life in the penitentiary.

The opinion states the case.

*V. L. Shurtliff*, for the appellant.—Cases cited in opinion.

*C. M. Cureton*, Attorney General, *John C. Wall*, Assistant Attorney General for the State.—On question of corroboration: Sowles, Jr., v. State, 52 Texas Crim. Rep., 18.

DAVIDSON, PRESIDING JUDGE.—This conviction was for rape with a life sentence imposed. The indictment charges that rape was committed upon a mentally unsound woman, and this by appropriate averments. To meet this it was requisite for the State to show, first, the act of intercourse by appellant, and, second, that prosecutrix was mentally unsound at the time. If the State failed to prove either fact beyond a reasonable doubt an acquittal should result. The evidence, therefore, must show that prosecutrix was mentally unsound, and that she had intercourse with defendant. If she was not mentally unsound, the State failed in its proof, for it alleged no other ground for rape. Being insane, the woman could not testify. The law rendered her incompetent as a witness, and this by legislative action. See Article 788, C. C. P.; Branch's Crim. Law, Sec. 701 for cited cases; Lee v. State, 43 Texas Crim. Rep., 288; Batterton v. State, 52 Texas Crim. Rep., 383; Lopez v. State, 30 Texas Crim. App., 487. The State, therefore, did not undertake to use her as a witness but relied upon such facts and circumstances as could be gathered. Had she been permitted to testify, it would have been on theory that she was a competent witness, and would not have been insane under the statute as shown by the authorities above cited.

To prove its case, the State introduced the confession of appellant. In this confession he admits and states that he had intercourse with the prosecutrix with her consent, if not at her solicitation and instigation. Conceding, so far as to what we have to say here, that this confession was properly admitted, and without discussing the surrounding circumstances attending the confession, and taking it in its fullest force, it cannot be held to prove the *corpus delicti*. This is so by the authorities. See 2 Branch Ann. P. C., pp. 1049 and 1050, for collation of cases. This is so well recognized now as not to require further notice or discussion. It has been decided in recent years and seems now to be a fairly recognized rule that the confession may be used to aid in proving the corpus delicti, subject, however, to the above statement that it can not of itself prove the *corpus delicti*. Kugadt v. State, 38 Texas Crim. Rep., 681; Frederickson v. State, 44 Texas Crim. Rep., 288; Austin v. State, 51 Texas Crim. Rep., 328; 68 L. R. A. 70. Unless there were facts and circumstances independent of the confession which showed the intercourse of appellant with

87 Tex.—17

prosecutrix, the confession would not be sufficient. We have read this record with a great deal of interest to ascertain if there were facts and circumstances that would justify this court in finding the confession corroborated or the *corpus delicti* proved with the aid of the confession, but have reached the conclusion that the record does not so show.

The husband of the prosecutrix testified that he had seen defendant at his house on one occasion when he was at work in a field near by; that on another occasion he and some gentleman who accompanied him came to his house and found defendant there, but he does not show any intimacy that would show the fact of intercourse. His testimony excludes the idea that appellant was afraid of being found at the residence, because his testimony makes it apparent that appellant knew or could have known that he saw him from the field and did know of his presence at the house at the time he was there. There is testimony to the effect that when the officers went to arrest appellant, or rather while they were searching for him, they approached the house where he was and he walked away. The theory of this was that he was seeking to avoid an arrest. This is a disputed issue, but appellant being a negro and prosecutrix a white woman, it would not be going far afield of this record to state that if he was aware of the fact they had a charge against him for having intercourse with the woman, she being a white woman, that it might be wisdom on his part not to fall into the hands of a crowd of white men, but we regard that as not being proof of intercourse. There must be some tangible evidence that he had intercourse with the woman. The statements and confession of defendant were introduced by the State, and, therefore, biding upon it unless disproved.

We have treated the case as if the woman was insane and incapable of giving consent to meet the requirements of the statute. It might be interesting to discuss the evidence from this standpoint, but doubtless it would be of no practical value, especially as bearing upon the point of proof of the crime itself. If she was insane and the defendant had intercourse with her, under the statute it would be rape. In the event she was not insane, the State would fail to prove the alleged case. Some of the testimony on this phase of the case would show that in her youth she was subject to an occasional spasm, showing epilepsy. It seems as she advanced in age these spasms increased in number and force. Some years before she was married to her husband she gave birth to an illegitimate child, which was several years of age at the time her husband married her. All these things he testified he knew at the time of the marriage. They lived together several years and during that time there was a child born to them. His testimony shows that she kept house, attended to the affairs about the home, nursed and took care of the child, and did the things that usually a wife would do under those circumstances. From his testimony it may be gathered he did not think her house-keeping was of a first-

class order, yet there was no attempt to show her insane at any time, but he lived with her, and the household duties were carried on in the usual style and under such environments. He stated that as she grew older the spasms came with increased force. Dr. Allison, an expert alienist, was placed upon the stand. He shows that he had had considerable experience in dealing with insanity and insane people in the insane asylum at San Antonio as well as in a sanitarium at Arlington. His testimony is to the effect that he never saw prosecutrix and knew nothing of her until brought to testify as an expert; that he examined into the case and gathered such facts as he could under the limited time, and that he was of the opinion that her will power of resistance was gone, and that she could be persuaded to do almost anything that was asked of her, but yet she had he said sufficient will power to resist things she did not want to do, but that she was easily persuaded to do things. When it was called to his attention that she did the ordinary chores about the home and gave attention to her family matters and child, he said that would be done largely from a matter of habit and mechanically. There are instances given in which she seemed out of usual in matters about home as testified by her husband. For instance, he said she would some time prepare dinner for him and after it was eaten she wanted to prepare another meal; and that she refused to wean her child at his suggestion, and that in order to bring that about he sent her to a relative on a visit and he took the child somewhere else. It seems she declined for some reason to wean her child. He continued to live with her after he ascertained the relation of the defendant and his wife as he states, and was living with her at the time of the trial. There is a lot of testimony, but this is about the concrete substance of it. This much is mentioned to show it may be a question as to her insanity or mental unsoundness. Dr Allison testified, and it seems is supported by the authorities, to the effect that epilepsy is not a form of insanity, but that it may reach such stage in its progress as would render the subject of the epilepsy incapable of exercising sufficient will power to resist. It might be an interesting question for discussion if thought necessary, but that it is not insanity seems to be well recognized, and comes within the statute, if at all, by reason of the fact that epilepsy may reach that stage on the patient that would bring incapacity of exercising will power and resistance. An interesting case will be found in Speedling v. Worth Co., 68 Iowa, 152; 31 L. R. A. (N. S.), 978; Osborn v. State, 31 L. R. A. (N. S.)978. See also 143 Wis. 249; Words & Phrases, 2d Ger., Vol. 2, p. 1090. The court should submit the question of insanity of the prosecutrix in appropriate charges.

Believing the State has failed to prove the act of intercourse by competent and legal evidence, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*