*Egestpo "Chippo"* **SANCHEZ**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 44463.

Court of Criminal Appeals of Texas.

March 22, 1972.

Rehearing Denied May 31, 1972.

OPINION

DALLY, Commissioner.

The conviction is for the rape of a mentally diseased woman; the punishment, ten years imprisonment.[1]

The prosecutrix's brother, who had worked with and who was a friend of the appellant, had recently died from injuries received in an accident. On the night of March 7, 1969, the brother's body had been taken to the home of another member of the family where it was to remain pending funeral services. In an apparent effort to find the home where the body of the deceased had been taken in order to pay their respects, the appellant and his brother went to the residence where the prosecutrix lived with her family.

When the two men arrived, they found only the prosecutrix, her two retarded brothers, and her eleven-year-old niece, Lupe Luera. The niece went with the appellant and his brother to help them find the home where the body of the deceased had been taken. When they were unsuccessful in finding it they returned. The men then asked if anyone else knew the whereabouts of the deceased, whereupon the prosecutrix nodded her head affirmatively. The appellant then "got her by the arm and took her" to the pickup and "pushed her inside."

At about 9:00 p. m. a neighbor, Elida Sanchez, arrived at the home of the prosecutrix with two of the deceased's relatives. As she started to park behind appellant's vehicle, the man entering the truck motioned her to get her automobile "out of

Chappell & McFall by Byron Chappell, Lubbock, for appellant.

Vernon D. Adcock, Dist. Atty., Lamesa, Jim D. Vollers, State's Atty., Austin, for the State.

1. When the appeal of this case first reached this court, it was made known that the appellant had been represented during trial by appointed counsel and that notice of appeal had been given. No statement of facts nor brief for appellant appeared in the record. The record was silent as to whether or not the appellant was still indigent or had an attorney to represent him on appeal. The State, at that time, moved that the appeal be abated for further proceedings as if the record on appeal had not been filed in this court. The State's motion to abate was granted. Egestpo "Chippo" Sanchez v. State, 458 S.W.2d 815 (Tex.Cr.App.1970).

Since the appeal was abated, a transcript of the testimony has been filed in the trial court and counsel for appellant has filed a brief in the trial court. Both the transcript of the testimony and appellant's brief have been forwarded to this court.

the way," whereupon she moved her "car back, and the truck pulled back real fast and pulled away. . . . The truck backed all the way [to the intersection] and then turned at the corner . . ." The witness testified that from behind the pickup she could not clearly see the features of the people in it, but that she could see that the occupants were two men and a woman. "When the truck left," the prosecutrix's niece "ran out and told [the occupants of Elida Sanchez's automobile] that two men took my aunt."

The witness Sanchez then went to the home where the body of the deceased had been taken to determine whether the men had gone there with the prosecutrix. When it was learned that the three of them had not arrived, several persons left to look for the appellant's "light-green" pickup. Taking part in the search was a fourth brother of the prosecutrix. At about 10:30 p. m. he saw a light green pickup parked beside a dirt road. When he turned onto the road, the truck "took off." He gave chase but turned his automobile over before catching the truck. He got close enough to see two people in the pickup but could not tell if a third person was between them.

The prosecutrix was not seen again until between 2:00 and 3:00 a. m. the morning of March 8, 1969, at which time she was seen walking toward her house. She was "bending over, holding her stomach" and "she had blood coming out of her mouth." She was "red, out of breath . . . her slip was out, and her bra was unbuttoned —unzipped . . . and the zipper on the dress was not up."

Later that morning the prosecutrix was examined by Dr. David Smiley, who testified that her vaginal opening had been torn, that there was bleeding, and that his examination revealed the presence of sperm. Dr. Smiley testified that at the time of the examination the prosecutrix was extremely nervous and frightened and that it was his observation that she was mentally deficient.

The evidence shows that it was well known that the complainant was a mentally retarded girl. Although nineteen years old at the time of the trial, she had attended school only a few days in her lifetime. She was not permitted to leave her home unaccompanied by another member of her family. She understood only Spanish, an interpreter was used at the trial. Prosecutrix apparently could not testify audibly. Her response to interrogation both on direct and cross-examination was almost wholly by nodding her head in an affirmative or negative manner.

Dr. Smiley testified that "you could ask her things a child ought to know of six or seven and she didn't seem to have that knowledge even." With regard to his opinion of her ability to understand and resist the act of intercourse, he stated: "I feel that the girl was having apparently no ability to succeed in school, and. other things, other factors, in addition to talking with her, indicated [her] to be mentally deficient, and as such I doubt that she had a complete understanding of all this. I doubt that she really would fight it off like you or I would expect our intelligent daughters to."

Dr. Smiley testified that the results of a pregnancy test given on April 24, 1969, were positive. Because of the complaining witness's mental deficiency, an abortion was performed.

Appellant and Manuel Sanchez were jointly charged with the offense, but only the appellant was on trial in this case. There was a two-count indictment. The first count alleges the rape of a mentally diseased woman, "she then being so mentally diseased as to have no will to oppose said act of carnal knowledge and . . . the said Egestpo 'Chippo' Sanchez . . . did then and there well know her to be so mentally diseased." The second count of the indictment alleges rape by force and threats.

Both counts were submitted to the jury. The jury found the appellant guilty under the first count, alleging the rape of a mentally diseased woman.

We deal first with appellant's ground of error which urges that "The injured party was an incompetent witness and should not have been allowed to testify." While we note that this ground of error was not raised in the trial court, we cannot and do not dispose of it on that basis because, in view of prior decisions, it is a fundamental issue in the case.

Prior decisions of this court which will be discussed have held that if the prosecutrix is offered as a competent witness by the State and she testifies, a conviction based upon a charge that prosecutrix was mentally diseased cannot be sustained. This court has consistently held that mere mental deficiency would not bring a woman within the protection of the statute.[2] The prior decisions have equated the statutory term *"mentally diseased"* with the legal term *"insanity"* as it is defined in the criminal jurisprudence of this State.

In Lee v. State, 43 Tex.Cr.R. 285, 64 S. W. 1047 (1901), the court said:

"But here the question of consent is assumed, and the act of copulation occurs simply because the victim's mind was so unsound as to be incapable of giving assent. How unsound must it be? Evidently it must be so impaired as to be incapable of yielding an intelligent assent to what is being done. · In our opinion, the same test must be applied to this impairment of intellect

which exonerates from responsibility on account of insanity as to other criminal matters. That is, the intellect must be so broken down or destroyed by disease as not to know the right and wrong of the particular act, or, knowing the right and wrong thereof, on account of mental disease not able to oppose the will to the act of carnal intercourse. In other words, if the female is intelligent, and is capable of yielding to persuasion, and is overcome by that, she is not the subject of rape, under this statute. On the contrary, if she is an idiot, or so imbecile, on account of her mental disease, as to have no will power to assent or dissent, then she is protected by the statute. We accordingly hold that under the allegations of this indictment, the prosecutrix was not a competent witness to prove the corpus delicti of the offense charged; that is, the allegation in the indictment apprehends her insanity at the time charged as to the particular act, and as to that she is not a competent witness. Lopez v. State, 30 Tex.App. 487, 17 S.W. 1058, 28 Am.St.Rep. 935; Thompson v. State, 33 Tex.Cr.R. 472, 26 S.W. 987; 2 Bish.New Cr.Law §§ 1122, 1123; Crosswell v. People, 13 Mich. 427, 87 Am. Dec. 774; and see Baldwin v. State, 15 Tex.App. 276."

In Cokeley v. State, 87 Tex.Cr.R. 256, 220 S.W. 1099 (1920), it was stated:

"The indictment charges that rape was committed upon a mentally unsound woman, and this by appropriate averments. To meet this it was requisite for the state to show: First, the act of in-

---

2. Article 1183, Vernon's Ann.P.C., provides:

"Rape is the carnal knowledge of a woman without her consent obtained by force, threats or fraud; *or the carnal knowledge of a woman other than the wife of the person having such carnal knowledge with or without consent and with or without the use of force, threats or fraud, such woman being so mentally diseased at the time as to have no will to oppose the act of carnal knowledge,*

*the person having carnal knowledge of her knowing her to be so mentally diseased; or the carnal knowledge of a female under the age of eighteen years other than the wife of the person with or without her consent and with or without the use of force, threats or fraud; provided that if she is fifteen years of age or over the defendant may show in consent cases she was not of previous chaste character as a defense.*

tercourse by appellant; and second, that prosecutrix was mentally unsound at the time. If the state failed to prove either fact beyond a reasonable doubt, an acquittal should result. The evidence, therefore, must show that prosecutrix was mentally unsound, and that she had intercourse with defendant. If she was not mentally unsound, the state failed in its proof; for it alleged no other ground for rape. Being insane, the woman could not testify. The law rendered her incompetent as a witness, and this by legislative action. See article 788, C.C. P.; Branch's Crim.Law, § 701, for cited cases; Lee v. State, 43 Tex.Cr.R. 288, 64 S.W. 1047; Batterton v. State, 52 Tex. Cr.R. 383, 107 S.W. 826; Lopez v. State, 30 Tex.App. 487, 17 S.W. 1058, 28 Am. St.Rep. 935. The state therefore did not undertake to use her as a witness . . ."

In Thompson v. State, 33 Tex.Cr.R. 472, 26 S.W. 987 (1894), the holding was that the evidence was not sufficient to submit to the jury a count alleging rape of a mentally defective woman where the complainant had been offered as a witness:

"Is she a competent witness? The state said so. Her competency was indorsed by the state. When the prosecution introduced her as a witness, it said to the jury, in effect, that the witness was then sane, and was sane at the time when the events happened of which she is called upon to testify."

In White v. State, 109 Tex.Cr.R. 266, 4 S.W.2d 37 (1928), the first count of the in-

dictment charged the rape of a mentally diseased woman. It was said:

"Prosecutrix was introduced as a witness by the state. If the case had been submitted under the first count of the indictment and under the evidence as produced by the state, she would have been incompetent as a witness against appellant. Lee v. State, 43 Tex.Cr.R. 285, 64 S.W. 1047; Thompson v. State, 33 Tex. Cr.R. 472, 26 S.W. 987; Cokeley v. State, 87 Tex.Cr.R. 256, 220 S.W. 1099. Such count, however, was dropped, and the trial being upon the count charging rape by force, her sanity was vouched for by the state . . ."

Davis v. State, 100 Tex.Cr.R. 617, 272 S.W. 480 (1925), used the following language:

"When the state tendered prosecutrix as a witness it thereby vouched for her competency, not only to testify in the case, but also vouched for her mental capacity to withhold or give consent to such act of carnal knowledge."

The judicial determination that the degree of mental deficiency contemplated by Article 1183, *supra,* is that of legal insanity, coupled with the procedural statute regarding the competency of witnesses,[3] furnished support for the above opinions from which we have quoted, and for other cases of similar holdings.

The test set forth in *Lee,*[4] and consistently followed, is one of statutory construction which we now review.[5] While

3. Article 38.06, V.A.C.C.P. provides in part:
    "All persons are competent to testify in criminal cases except the following:
    "1. Insane persons who are in an insane condition of mind at the time when they are offered as a witness, or who were in that condition when the events happened of which they are called to testify; . . ."

4. Professor Wigmore said:
    "The following decisions commit an absurdity in the name of the law: 1907,

State v. Smith, 203 Mo. 695, 102 S.W. 526 (Rape of a deaf and dumb woman); 1901, Lee v. State, 43 Tex.Cr. 285, 64 S.W. 1047 (Rape by intercourse with a woman mentally incapable; the incapacity which is essential to the crime, held also to make the woman incompetent to testify." 2 Wigmore, Evidence, Section 498, p. 591 n. 2 (3d ed. 1940).

5. While it is noted that Thompson v. State, supra, decided prior to Lee, suggested the test stated in the latter case, the court there declined to exclude the testimony of

we are faced with the disadvantage of having no "legislative history," per se, we are not without some guidance. We consider the case of Baldwin v. State, 15 Tex.App. 276 (1883), cited in *Lee* as authority for that opinion.

*Baldwin* involved a charge of rape by force and fraud upon an individual alleged by the prosecution to be insane. The court wrote:

"[I]t is urged with great force that, as the girl was incapable of giving consent, because of defective mental capacity to such an extent that she did not know that 'carnal knowledge outside of lawful marriage was morally wrong,' therefore no force was required, and that consent could not be given by such a person. And, in line with this view of the case, the learned judge presiding upon this subject instructed the jury as follows:

" 'A female person over ten years of age, or over that age (sic), is presumed to be capable of giving consent to carnal knowledge; but such presumption may be rebutted or removed by proof, where such female is shown to be so deficient in mental capacity as not to know that carnal knowledge outside of lawful marriage is morally wrong; for, in case of such want of knowledge at the time the act charged (if ever) was committed, then such person is presumed to be incapable of giving assent.' " 15 Tex.App. 280.

At the time of the alleged offense in *Baldwin,* the Penal Code provided:

" 'Rape' is the carnal knowledge of a woman without her consent, obtained by force, threats or fraud, or the carnal knowledge of a female under the age of ten years, with or without consent, and

with or without the use of force, threats or fraud." Article 528, Penal Code of 1879; O.C. 523.

The reviewing court in *Baldwin* considered the case upon "two phases . . . of defective intellect: First, complete insanity; and second, imbecility of mind not amounting to insanity. . . ." The court's position was that had the prosecutrix suffered "complete insanity" she would have been protected under the then existing statute. "We are of the opinion that, at common law, when the woman is completely insane—insane to such an extent that she *cannot* assent or dissent to the act—and the man does not suppose he has her consent, the force required, and which is involved in the carnal act, would be sufficient." The opinion reflects that this common-law aspect of rape was considered to be implicit in the offense of rape defined by the Penal Code.[6] The court said, "We are of the opinion that the evidence failed to show the insanity of the prosecutrix at the time of the act of carnal knowledge in such a clear and satisfactory manner as will relieve this case of the necessity of proof of force and want of consent."

Having disposed of the theory of *"complete insanity"* on the basis of the evidence there before it, the court then considered whether "imbecility of mind not amounting to insanity" was, as the State urged, to be given that protection accorded a child under ten years of age. This theory, too, was rejected, the court reasoning that "if it required an act of the Legislature to constitute carnal knowledge of a child under ten years of age, with or without force, threats or fraud, and with or without consent, rape, how can it be claimed that knowledge of a female over ten—though occupying the same mental position as a

the complaining witness; instead, the cause was considered to have been properly submitted only on the charge of rape by force.

6. Article 4, Penal Code of 1879 provided:
    "The principles of the common-law

shall be the rule of construction, when not in conflict with the Penal Code, or Code of Criminal Procedure, or with some other written statute of the state. [O.C. 4, Feb. 12, 1858, p. 156.]"

child—with or without fear, threats or fraud, and with or without the consent, can be rape?"

After having determined that carnal knowledge of a female suffering from complete insanity was proscribed by law, and that carnal knowledge of one "insane —*non compos mentis*—without knowledge of the right or wrong as to the act, but [who] nevertheless assents, prompted by natural desire . . ." did not constitute a criminal offense, the court then wrote:

> "[W]e most respectfully suggest to the Legislature the passage of an act to this effect: 'That if any male person, fourteen years old or upwards, shall have carnal knowledge of any other woman than his wife, such woman being so mentally diseased at the time as to have no will to oppose to the act of carnal knowledge, he knowing her to be so mentally diseased, he shall be guilty of rape.'" 15 Tex.App. at 286.

We can only conclude that the above recommendation, adopted by the Legislature in 1887,[7] was intended to effect a change in the law, and was to provide protection for those who were mentally diseased to an extent not amounting to insanity.

It is plain to see the decisions since the statute was changed in 1887 have not recognized the change which the court suggested in *Baldwin.*

■ We now depart from the rule stated in Lee v. State, *supra;* that case and all other cases in conflict with the opinion in this case are overruled to the extent of such conflict. The capacity to consent to rape, being a question of the criminal law, is not to be used as the standard for capacity to testify. A female legally incapable of such consent as is contemplated by the rape statute may be able to give a dependable account as a witness.

■ The issue is whether the defect of mentality, either at the time of the event or at the time of trial, is such as to render the witness untrustworthy. Inquiry must be made as to whether the witness had the capacity to observe the events about which she is to testify; whether she has the capacity to recollect those events; whether she has the capacity to understand the questions asked her and to communicate answers thereto; and as to whether the witness recognizes the moral responsibility to relate the truth. 2 Wigmore, *supra,* at 591; see Nations v. State, 91 Tex.Cr.R. 112, 237 S.W. 570 (1922); and Saucier v. State, 156 Tex.Cr.R. 301, 235 S.W.2d 903 (1950), cert. den., 341 U.S. 949, 71 S.Ct. 1016, 95 L.Ed. 1372 (1951), reh. den. 342 U.S. 843, 72 S.Ct. 23, 96 L.Ed. 637 (1951).

The case of Wilkinson v. People, 86 Colo. 406, 282 P. 257 (1929) decided by the Supreme Court of Colorado, is much like the case at hand. There, the defendant was charged in a two-count indictment, the first charged rape by force and the second rape upon a person "incapable through unsound mind of giving legal consent." The verdict returned on the first count was "not guilty" so only the second count was considered by that court. The permitting of the injured party to be sworn and to testify was there urged as reversible error.

The victim in that case was a dwarf, twenty-four years of age, four feet in height and weighing about sixty pounds; her mentality was that of a child of ten years, although she had completed the ninth grade work in the public schools. She was seldom away from home where she engaged in work as one of her physical and mental powers might be expected to perform.

In discussing the contentions made in *Wilkinson* the court said:

> "It is next contended that error was committed in permitting the victim to

---

7. Act of Feb. 25, 1887, p. 7:
   "This amendment was doubtless made upon the suggestion advanced in Bald-

win v. State, 15 Tex.App. 275, . . .", Willson's Texas Criminal Statutes, § 904, p. 178 (3d ed. 1888).

testify, because the information alleged that she was 'incapable through unsound mind of giving legal consent.' This means, when used in the rape statute, that the victim does not have the mental capacity to understand and appreciate the nature of the act; the enormity of the offense committed against her; its immoral character; and the natural and probable consequences attendant upon this violation of the law . . . She may testify when it is found that she appreciates the nature and obligation of an oath, and has sufficient mental capacity to observe and correctly describe the facts under investigation; this notwithstanding her mental powers and resources are limited, and her mind is weak and feeble. The victim's incapacity to give legal consent does not necessarily carry with it the incapacity to truthfully and accurately thereafter relate the facts constituting the commission of the offense.

"In some states having statute similar to the one under consideration, this exact question has been determined adversely to the defendant's contention. People v. Peery, 26 Cal.App. 143, 146 P. 44; Beard v. State, 37 Okl.Cr. 62, 256 P. 354; Adams v. State, 5 Okl.Cr. 347, 114 P. 347; State v. Prokosch, 152 Minn. 86, 88, 187 N.W. 971; State v. Simes, 12 Idaho, 310, 85 P. 914, 915, 9 Ann.Cas. 1216; Hyde v. State, 26 Okl.Cr. 69, 221 P. 787.

"Whether or not the victim in this case possessed sufficient mental capacity to give her legal consent was a question of fact exclusively for the jury to determine. The victim was present in court and testified; the jury had the opportunity of seeing her, and were capable of judging as to her mentality, and determined that she did not have the mental capacity to give legal consent. There being competent evidence upon this question, the jury's determination is binding upon us." 282 P. at 259.

The reasoning further supporting Wilkinson v. People, *supra,* is sound and was stated as follows:

"Offenses such as the one under consideration are committed in secret, and, if we hold that the weak in mind and feeble in intellect are incompetent to testify as witnesses, simply because they are incapable of giving legal consent, we would, by our decision, rob these unfortunates of all the protection of our laws, and such instances of depravity and immorality as we have considered here could be carried on by the lowest of humanity without fear of punishment." 282 P. at 260.

Consistent with our decision here are the opinions in Smith v. State, 161 Ga. 421, 131 S.E. 163 (1926); State v. Simes, 12 Idaho 310, 85 P. 914 (1906); State v. Patrick, 201 Iowa 368, 207 N.W. 393 (1926); State v. Leonard, 60 S.D. 144, 244 N.W. 88 (1932); see also 26 A.L.R. 1491 at 1502; 148 A.L.R. at 1153; 31 A.L.R.3d 1226; and 2 Wigmore, *supra,* at 591.

The appellant challenges the sufficiency of the evidence in three particulars.

■ He first contends that there is no proof of penetration. The record reflects that when the prosecutor asked the complaining witness, "Did this man right here put his private part in your private part?" she answered in the affirmative. Further, medical testimony revealed that when the complaining witness was examined the morning following the offense, the doctor "noted that the vaginal opening, the hymen, had been torn, that there was a fresh injury with slight bleeding. . . . [T]here was sperm present, indicating that a male had injected sperm into this girl in the recent past." The evidence is sufficient to establish penetration. Giddings v. State, 438 S.W.2d 805 (Tex.Cr.App.1969).

■ Appellant next urges that there is "no evidence that the defendant knew that the injured party was mentally diseased."

Our statute provides that the accused must know the prosecutrix to be mentally diseased. This has been recently considered in Bradford v. State, 477 S.W.2d 544 (Tex.Cr.App.1972), where we found "the evidence sufficient to support the jury's determination that appellant should have been aware that [prosecutrix] was so mentally diseased as to be unable to give consent." Harris v. State, 474 S.W.2d 706 (Tex. Cr.App.1972), was reversed because of insufficient evidence—"There [was] nothing in the record to indicate [defendant] knew [prosecutrix's] condition, if it existed." It was observed that the defendant "might have known he was doing something wrong, that he should not be having intercourse with this woman. However, there is a difference between engaging in an illicit act of intercourse and engaging in that act knowing the woman is so mentally diseased she cannot resist it."

Is the evidence in this case "sufficient to support the jury's determination that appellant should have been aware that [prosecutrix] was so mentally diseased as to be unable to give consent?"

The record shows that the appellant was a friend of and had worked with the prosecutrix's deceased brother. There was testimony that the appellant knew the prosecutrix and her family. The prosecutrix's family had lived in Lamesa for a number of years. The length of time that the appellant had been in Lamesa was not shown directly. However, under cross-examination by defense counsel, the prosecutrix's brother Jesse said he had known the appellant and the appellant's brother Manuel to be in Lamesa for about the same length of time. Jesse said he knew the appellant better than appellant's brother Manuel because Manuel had been away from Lamesa part of that time serving two terms in the penitentiary. This indicates appellant had been in Lamesa for some time. The prosecutrix's brother Jesse did not know whether the appellant had ever been in his father's house or not, but knew that the appellant had ridden back and forth to work with deceased's brother for some period of time.

In addition to the testimony of Dr. Smiley regarding the mentality of the prosecutrix, there was testimony of two neighbors and of the prosecutrix's brother. One of the neighbors had known the prosecutrix for eight years when she had lived close to them in Lamesa and the other neighbor had known the prosecutrix since the prosecutrix's birth in 1950. She said that she was "close" to the family. She stated that the prosecutrix rarely talked; she said "sometimes I keep on asking her questions and trying to get some words out of her and she just you know, nods her head yes or no." This same witness testified that she knew there had been an attempt to send the prosecutrix to school but that she could make no progress because "they could never get her to talk."

The prosecutrix, as a witness, testified on direct and redirect examination of the prosecutor and on cross-examination and recross-examination of defense counsel. She answered only three questions audibly, the rest of her testimony was elicited by having the question translated to Spanish by an interpreter and she would nod her head either in an affirmative or negative manner.

The jury heard the testimony of all of the witnesses and the testimony of the prosecutrix and were able to observe her demeanor in the courtroom and on the witness stand. The jury's determination that the appellant knew that the prosecutrix did not have the mental capacity to give consent is supported by the record.

■ Appellant contends that the evidence is insufficient "to prove that the offense was committed in Dawson County, Texas." The testimony revealed that the offense took place at the "labor camp in Lamesa, Texas." This is sufficient to show that venue properly lay in the county where prosecution was had. See 24 Tex. Jur.2d Sec. 740, p. 418.

In another ground of error the appellant alleges "the court erred in refusing to charge the jury relative to the defense of alibi." No evidence adduced at trial is shown to be inconsistent with the prosecution's theory. The issue of alibi was not raised by the evidence and the refusal to charge thereon was not error. See Lee v. State, 454 S.W.2d 207 (Tex.Cr.App.1970); 31 Tex.Jur.2d, Sec. 114, p. 670. This ground of error is overruled.

In the last ground of error to be discussed, the appellant challenges the in-court identification of the appellant by the witness Lupe Luera. At a hearing out of the presence of the jury it was shown that the prosecutrix's eleven-year-old niece was taken to Lubbock within a "day or two" after the offense and there identified the appellant for police officers. Prior to this time she was shown several pictures and identified a photograph of the appellant from among them. The record does not show that "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968). The witness testified that her original identifications of the appellant were free from suggestion and that her in-court identification of the appellant was made on the basis of her observations of him on the night of the offense. Further, the error, if any, was harmless beyond a reasonable doubt. Daniels v. State, 464 S.W.2d 368, 371 (Tex.Cr.App.1971). The complaining witness made an unequivocal in-court identification of the appellant. This ground of error is overruled. See Boyd v. State, 472 S.W.2d 125 (Tex.Cr.App.1971).

The judgment is affirmed.

Opinion approved by the Court.

ONION, Presiding Judge (dissenting).

The indictment in the instant case charged in the first count thereof the rape of a mentally diseased woman "she then being so mentally diseased as to have no will to oppose said act of carnal knowledge" and that the appellant "did then and there *well know* her to be so mentally diseased." (Emphasis supplied). The second count of the indictment alleged rape by force and threats.

At the close of the State's case in chief, the court refused to make the State elect which count it would prosecute upon. Although the prosecutrix testified both counts of the indictment were submitted to the jury and they found the appellant guilty of the rape of a mentally diseased woman as charged in the first count.

Recognizing the cases which hold that the prosecutrix in the offense of rape of a mentally diseased woman is an incompetent witness because of her mental condition, the State commences its brief by saying, "The State concedes that this court should exclude the testimony of [complaining witness] in determining the sufficiency of the evidence to prove appellant's guilt." This, of course, we cannot do. The State thus finds itself in a predicament.

The majority in a scholarly opinion by Judge Dally finds that the capacity to consent to rape is not to be used as the standard for capacity to testify and overrules all of the old cases holding that the degree of mental disease must be the same as that showing legal insanity, that is—not knowing right from wrong and the nature and consequences of the act. While I have some serious misgivings about the abandonment of the old rule, I do not dissent on this ground.

I do dissent, however, on the sufficiency of the evidence to support the allegation in the indictment that the appellant "did then and there *well know* her to be so mentally diseased."

The length of time that appellant had lived in Lamesa is not shown by this record. It was shown that the appellant was a friend of and worked with the prosecutrix's deceased brother. It was shown, however, by the testimony of the prosecutrix's father that appellant had never been in the house where the prosecutrix lived

and had only been outside the house on a few occasions to pick up his deceased son to go to work. The father related that on most occasions that he or his deceased son would pick up the appellant at his home to go to work.

While there was adequate evidence to show that the prosecutrix was mentally retarded, there was no showing that such knowledge had ever been communicated to the appellant. It was shown also that the prosecutrix stayed home most of the time and never did go anywhere except with some member of the family.

I cannot agree that the record supports the jury's supposed determination by general verdict that the appellant *well knew* that the prosecutrix did not have the mental capacity to give consent.

Just because neighbors who had known the prosecutrix for many years considered the prosecutrix mentally retarded or that a doctor who examined her thought so, too, does not mean that the appellant possessed such knowledge. There is no showing that the appellant had ever previously seen or even talked to the prosecutrix.

Finding the evidence insufficient, I would reverse. Harris v. State, 474 S.W. 2d 706 (Tex.Cr.App.1972).