**Opinion issued July 22, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NOS. 01-13-00537-CR & 01-13-00538-CR

_____

## JOSE FRANCISCO SAMAYOA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1378265, 1378267**

---

## MEMORANDUM OPINION

Appellant Jose Francisco Samayoa was convicted by a jury of two counts of aggravated sexual assault of a disabled individual. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(C) (West 2011). The jury assessed punishment at 50 years in prison. In this appeal, Samayoa argues that the evidence was legally insufficient to support

his conviction because there was no evidence that he knew the complainant was incapable, by reason of mental disease or defect, of appreciating the nature of the act or resisting it. *See id.* §§ 22.021(c), 22.011(b)(4). We affirm the judgment of the trial court.

## Background

Appellant Jose Francisco Samayoa married a woman named Lucy in 2008. The complainant in this case is Lucy's daughter, who at the time of the marriage was an adult in her early twenties.

Lucy had adopted the complainant when she was a young child. The complainant had been removed from the custody of her biological parents, who were related to Lucy, because both suffered from paranoid schizophrenia. When the complainant entered her adoptive mother's household at age seven, she suffered from several developmental impairments. She was unable to speak, groom herself, eat with a fork and knife, or dress herself. She did not speak her first words until the age of 10.

The complainant attended school as a special education student, where she received therapy and life skills training. At the age of 18, a probate court found her to be "totally incapacitated without the authority to exercise any rights or powers for herself," and it appointed Lucy as her guardian.

The complainant has been diagnosed with an unspecified communication disorder, autism, pervasive development disorder, and moderate to high mental retardation. The evidence at trial showed that she interacts politely with others, and she can perform simple tasks such as making a sandwich, putting on her clothes, and grooming herself. However, she cannot live independently, as she cannot do other essential tasks without supervision, such as using a stove or oven, seeking aid in a medical emergency, navigating a city bus system, or shopping for groceries. Accordingly, because of her disability, as a young adult the complainant lived with her mother Lucy.

Samayoa married Lucy and began residing with her family shortly after the complainant finished high school at age 22. Lucy testified that Samayoa observed her helping the complainant with simple tasks that she could not perform on her own, such as cooking on the stove, and that they discussed her disability.

Lucy had a cleaning business, with which Samayoa and the complainant sometimes assisted. Often, Samayoa and the complainant were alone together to clean an office building. On many such occasions, Samayoa would have sex with the complainant. He also had intercourse with her at home. The sexual encounters at the work sites and at home began when the complainant was 23 years old, and they continued over a period of several years.

In April 2012, Lucy went to a conference out of town and left the complainant at a relative's home. Samayoa later picked up the complainant and had intercourse with her. The next day, the complainant sent Lucy a text message, informing her that she had been having sex with Samayoa. Lucy then immediately arranged for the complainant to be taken to a police station.

An investigation ensued and Samayoa was indicted by a grand jury for aggravated sexual assault. At trial he admitted to having intercourse with the complainant. Lucy testified about the complainant's disabilities and Samayoa's history with the family. In closing argument, defense counsel argued that the complainant did not satisfy the relevant legal definition of a "disabled" person and that Samayoa did not know that she was incapable of consent. The jury found Samayoa guilty and sentenced him to 50 years in prison. He timely filed notice of appeal.

**Analysis**

In one appellate issue, Samayoa argues that the evidence was legally insufficient to support his conviction because there was no evidence that at the times he had sex with the complainant, he knew that as a result of mental disease or defect she was incapable of appraising the nature of the act or resisting it.

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most

favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* When reviewing the evidence, an appellate court must defer to the jury's determinations of credibility and the weight appropriate to different pieces of evidence. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Except for offenses involving a child, in order for a person to be guilty of aggravated sexual assault, the sexual contact must have occurred without the consent of the complainant. *See* TEX. PENAL CODE ANN. §§ 22.011(a), 22.021. If a person knows "that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it," then the sexual contact is deemed to occur "without the consent of the other person." *Id.* § 22.011(b)(4).

5

Considering the appellate record in this case, we do not agree that the evidence was legally insufficient to establish that Samayoa knew that the complainant, by reason of mental disease or defect, was incapable of appraising the nature of the act or of resisting it. Lucy testified that she spoke with Samayoa about the complainant's condition. There was also ample circumstantial evidence from which the jury could have inferred that Samayoa harbored the necessary mens rea. Proof of a defendant's state of mind "almost invariably depends on circumstantial evidence." *Tottenham v. State*, 285 S.W.3d 19, 28 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

It was undisputed that Samayoa lived in the same household with the complainant for a number of years and that they worked together in Lucy's cleaning business, and this factor supported the jury's conclusion he was aware of her characteristics that satisfied the statutory standard for a "disabled individual." *See Smith v. State*, 555 S.W.2d 747, 749 (Tex. Crim. App. 1977) (upholding jury's verdict when appellant worked as maintenance man in home of cognitively impaired sexual assault complainant and had interacted with her in the past); *Sanchez v. State*, 479 S.W.2d 933, 941 (Tex. Crim. App. 1972) (finding evidence sufficient to show that appellant was aware of victim's limited mental capacity when appellant knew complainant and her family, had lived in the same community for some time, and complainant was known in the community to be

6

mentally impaired); *cf. Harris v. State*, 474 S.W.2d 706, 708 (Tex. Crim. App. 1972) (holding evidence insufficient to find that appellant knew complainant lacked sufficient mental capacity when he had just met her and "she could appear normal for a time" to person of limited education). There was ample testimony as to the manifestations of the complainant's disability in her daily life, for instance, that she cannot use a stove, shop for groceries, navigate public transportation, or remain at home alone for extended periods. *See Sanchez*, 479 S.W.2d at 941 (testimony of witnesses as to appearance of disabled complainant supported jury's verdict); *Martinez v. State*, 634 S.W.2d 929, 935 (Tex. App.—San Antonio 1982, pet. ref'd) (in view of the evidence amply demonstrating the complainant's "manifestly obvious mental retardation," finding that the jury was entitled to believe the appellant knew that the complainant "was so mentally defective as to be unable to appraise the act of intercourse or to resist it"). Finally, Lucy specifically affirmed in her testimony that Samayoa was aware of the complainant's need for others to provide transportation for her, her inability to shop for groceries, and her inability to cook for herself with a stove or oven.

Moreover, the complainant also testified in this case, and the jury was able to observe her demeanor firsthand. This, combined with the evidence of her extensive interactions with Samayoa, further supported the conclusion that he was aware of her disability in the relevant, statutory sense. *See Sanchez*, 479 S.W.2d at

7

941 (holding that jury's observation of complainant in court supported its determination that appellant knew complainant lacked the mental capacity to consent); *Martinez*, 634 S.W.2d at 935 (explaining that convicting jury "was favored with firsthand observation" of the complainant on the witness stand "as she struggled to relate her version of the events"). Her statements revealed her cognitive and developmental limitations. For instance, when asked to define the word "true," she said, "Truth is that what Jose done wrong." When asked if she knew the meaning of the word "lie," she said, "Yes, a lie means that nothing happened."

In describing the acts of intercourse with Samayoa, the complainant often did not use the correct terms for genitalia, instead referring to the male organ as "peanut" and the female organ as "vaginis." Her testimony in other respects was likewise simple and childlike. For example, she described the sexual act as Samayoa "shaking" her. When she was asked why Samayoa used a condom, her answer showed no understanding of its prophylactic purpose. 5 RR 296. She testified that she tried to stop the encounters by pushing him off of her but that it "didn't work," that she asked him to stop but that "he wouldn't listen," and that she "prayed a lot for help" but "it didn't work, either."

From the body of evidence contained in the record, we hold that a rational factfinder could find beyond a reasonable doubt that Samayoa knew the complainant was unable to appreciate the nature of or resist the acts of intercourse, by reason of her mental disease or defect. *See Gear*, 340 S.W.3d at 746. Accordingly, Samayoa's sole issue is overruled.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).