Affirmed and Memorandum Opinion filed August 2, 2007








Affirmed and Memorandum Opinion filed August 2, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00459-CR

____________

 

DARRYL RAY HOUSTON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 174th
District Court

Harris County, Texas

Trial Court Cause No. 1011151

 



 

M E M O R A N D U M  O P I N I O N

Appellant Darryl Ray Houston challenges the legal and
factual sufficiency of the evidence to support his conviction for sexual
assault of a child. We affirm. 

I.  Factual and Procedural
Background








Appellant is the natural father of the complainant P.C.. 
Appellant had virtually no relationship with his daughter until she was a
teenager.  In 2002, when P.C. was fourteen years old, appellant came back into
his daughter=s life and indicated he wanted to establish a
relationship with her.  P.C.=s mother was agreeable to P.C. getting to
know her father and allowed the two to take outings together.  When appellant
would retrieve P.C. from her mother=s house, he
usually would take her to his house, his girlfriend=s house, his
mother=s house, or to his
sister=s house.   

Around May 2003, appellant picked P.C. up from her mother=s house, dropped
his girlfriend off at her house, and stopped on the side of a street in an
unknown location.  Appellant then turned toward P.C., and placed his hand on
P.C.=s vagina outside
of her clothing.  P.C. pushed his hand away and told him to stop.  Appellant
complied for the moment, but then drove to another unknown location, parked the
car again, and again touched P.C.  Shortly thereafter, appellant drove to a
nearby parking lot.  After parking the car, appellant turned toward P.C.,
reached over her, and reclined her car seat.  He then placed his hand
underneath her shorts,  and P.C. struggled and pulled his hand away. 
Initially, P.C. did not tell anyone about this incident. 

Thereafter, on a few occasions when P.C. and appellant were
alone at appellant=s girlfriend=s house, appellant
forced P.C. to remove her clothing and inappropriately touched her.  On these
occasions, appellant informed P.C. that he was Atrying to see what
[she] would do if someone actually tried to touch her or rape her.@  Appellant
touched P.C.=s vagina when he made these comments, and during one
instance, appellant placed his finger inside of her vagina.  Appellant also
forced P.C. to remove her clothing, and inserted his penis in her bottom.  P.C.
told appellant to stop because it Aburned@ and Ahurt.@   








On August 1, 2003, shortly before P.C.=s sixteenth
birthday, appellant took P.C. to his home.  There, appellant told P.C. that he
had just broken up with his girlfriend, and was living by himself.  Appellant
told P.C. to come to his bedroom and informed her that she was going to get a Awhipping.@  Appellant had
given P.C. Awhippings@ before and would
make her remove only her pants.  This time, however, appellant told her to
remove all of her clothing and lie down on the bed.  P.C. resisted at first,
but complied after appellant displayed a belt and told her that he would whip
her if she refused.  Even though P.C. complied, appellant whipped her twice on
the back of her legs.  As he whipped her, appellant=s girlfriend drove
up to the house.  Appellant stopped momentarily to go outside and talk to his
girlfriend.  Shortly thereafter, appellant=s girlfriend left,
and appellant told P.C. that he was going to take her home.  They got into
appellant=s car, but instead of going to P.C.=s home, appellant
went to a store, purchased some beer, and took P.C. back to his house. 
Appellant left but there was no telephone in the house for P.C. to call her
mother (or anyone else) to come and pick her up.  While appellant was gone,
P.C. fell asleep on the living room floor.  Later, P.C. awoke only to realize
that appellant was on top of her and was having sexual intercourse with her. 
P.C. tried to push appellant off of her, but he forced her to remain still. 
Very scared and angry, P.C. continued to struggle with appellant.  Appellant
finally removed himself, and went to his bedroom.  P.C. eventually fell asleep.


The following morning, appellant told P.C. that he would
take her home and told her not to tell anyone what had happened.  Immediately
after arriving at her own home, P.C. went to her bedroom and cried.  P.C. told
her fourteen-year old friend what had happened and the friend encouraged P.C.
to tell her mother about the assault, but P.C. refused because she was too
scared to tell.  After this incident, P.C. refused to go to appellant=s home or see him
anymore, which prompted P.C.=s mother to ask appellant what he had done
to P.C..  Appellant replied that he had not done anything and that A[P.C.] was crazy.@  

Meanwhile, at school, P.C.=s teachers began
to notice a marked change in P.C.=s attitude and
demeanor. P.C. began using profanity and began acting out-of character,
demonstrating a bad attitude and misbehaving in class.  P.C.=s behavior at home
changed, too.  Her mother noticed that she seemed angry all the time.  








In March 2004, P.C.=s tenth grade
English teacher gave the class a writing assignment in which she instructed the
students to write about an instance in their lives that they remembered the
most.  P.C. turned in a poem entitled, AThe Day I Almost
Got Raped.@  After reading the poem, the teacher reported the
disturbing writing to several members of the school faculty, including another
teacher, a school counselor, the school nurse, and the assistant principal. 
The  school administrators called P.C. to a conference at which they explained the
difference between actually being raped and almost being raped. During the
conference, P.C. informed the administrators that the incident she referred to
in her writing was an Aactual@ rape.   

The school called P.C.=s mother, the
police, and Children=s  Protective Services.  The police came
to the school and took statements from P.C., as well as the school
administrators who attended the conference.  When P.C.=s mother arrived,
the school administrators met with her and P.C. in another conference.  During
this second conference, P.C. appeared withdrawn, reluctant to answer further
questions, and refused to make eye contact with anyone.  However, P.C.
described the incidents with appellant.  She was then taken to the Children=s Assessment
Center for a videotaped interview.  

Houston Police Officer Shawn Valenta, who was investigating
the case, contacted appellant to inform him of the allegations against him and
asked if he would make a statement.  Appellant voluntarily made a statement in
which he denied all of the allegations.    Appellant was arrested and charged
with the felony offense of sexual assault of a child.  Though he pled Anot guilty,@ a jury found
appellant guilty.  During the punishment phase, appellant stipulated that he
previously had been convicted of aggravated assault of a police officer,
unauthorized use of a motor vehicle (twice), possession of a controlled
substance, unlawful carrying of a weapon, assault, burglary of a vehicle
(twice), auto theft (three times), and driving while intoxicated.  Appellant=s niece also
testified during the punishment phase, and stated that appellant had sexually
assaulted her when she was fifteen years old.  The trial court sentenced
appellant to fifty years= confinement. 

 








II.  Issues and Analysis

In four issues appellant asserts two legal sufficiency
challenges (first and third points), and two factual sufficiency challenges
(second and fourth points).  

A.      Legal
Sufficiency  

When evaluating legal sufficiency challenges, we view the
evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99
S.Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795, 798 (Tex.
Crim. App .2005).  The standard is the same for both direct and circumstantial
evidence cases.  King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App
.1995).  We do not resolve any conflict of fact, weigh any evidence, or
evaluate the credibility of any witnesses, as this was the function of the
trier of fact.  See Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim.
App. 1992).  We view all of the evidence admitted at trial, and resolve any
inconsistencies in the evidence in favor of the verdict.  Id.

Complainant=s Credibility

          Appellant
asserts, in his first issue,  that the evidence is legally insufficient to
support his conviction because P.C.=s testimony lacked
credibility.  Appellant argues that P.C.=s testimony was
not corroborated by any other witness or by any physical evidence, which he
claims undermines the credibility of her testimony.  Appellant contends that
P.C.=s behavioral
problems, such as moodiness or rudeness, are characteristics of any typical
teenage girl and are not evidence that she was sexually assaulted.  Appellant
further states that P.C.=s testimony is contrary to his statements
denying the sexual abuse. 








A person commits sexual assault of a child if he
intentionally or knowingly causes the penetration of the female sexual organ of
a child by any means.  Tex. Penal Code
Ann. ' 22.011(a)(2)(A) (Vernon Supp. 2006).  In the present
case, the indictment alleged that appellant intentionally and knowingly caused
the penetration of the female sexual organ of P.C., a person younger than
seventeen years of age, by placing his sexual organ inside of her sexual
organ.  P.C. testified at trial, identified appellant as the assailant, and
described how he had sexually assaulted her.  








The evidence reflects that soon after appellant entered
P.C.=s  life, he
engaged in several instances of inappropriate sexual contact with P.C.,
including sexual intercourse.  P.C. not only testified that appellant
forced her to engage in sexual intercourse, she gave a detailed description of
the assault for which he was charged, stating that appellant moved back and
forth, while she tried to push him off of her.   The jury was the sole trier of
fact and it was the jury=s province to judge the credibility of the
witnesses, reconcile the conflicts in the testimony, and accept or reject any
or all of the evidence on either side.  Chambers v. State, 805 S.W.2d
459, 461 (Tex. Crim. App. 1991).  As the factfinder, the jury could have
believed P.C.=s testimony and wholly disbelieved any or all of the
defense=s evidence. 
See Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Marc v.
State, 166 S.W.3d 767 (Tex. App.CFort Worth 2005,
pet. ref'd) (holding that jury could have believed victim so as to support
conviction for aggravated sexual assault even though defendant argued that the
victim=s veracity was
suspect because she was a prostitute and drug addict and convicted felon). 
Furthermore, the testimony of P.C., standing alone, is sufficient to support
appellant=s conviction of aggravated sexual assault of a child. 
See Satterwhite v. State, 499 S.W.2d 314, 315 (Tex. Crim. App. 1973)
(holding that victim=s testimony that appellant placed Ahis male organ
into her private parts@ was sufficient to sustain conviction); Sanchez
v. State, 479 S.W.2d 933, 940 (Tex. Crim. App. 1972) (holding that victim=s affirmative
answer to question about whether defendant Aput his private
part in your private part,@ along with corroborating medical
testimony, was sufficient to establish penetration); Jensen v. State, 66
S.W.3d 528, 534 (Tex. App.CHouston [14th Dist.] 2002, pet. ref'd)
(stating that the testimony of a victim, standing alone, even when the victim
is a child, is sufficient to support a conviction for sexual assault); West
v. State, 121 S.W.3d 95, 111 (Tex. App.CFort Worth 2003,
pet. ref=d) (stating that
victim=s testimony is
sufficient to sustain conviction of sexual assault); Kimberlin v. State, 877
S.W.2d 828, 831 (Tex. App.CFort Worth 1994, pet. ref=d) (holding that a
child victim=s outcry statement alone can be sufficient to support
a conviction for aggravated sexual assault).  Moreover, P.C.=s mother and  P.C.=s English teacher
provided corroborating evidence.  Viewing the evidence in the light most
favorable to the verdict, we conclude that a rational trier of fact could have
found beyond a reasonable doubt that appellant committed the offense. 
Accordingly, we overrule appellant=s first issue.

Commission of Offense Within the State of Texas








 In his third related issue, appellant contends the
evidence is legally insufficient to support his conviction because the State
failed to prove that any element of the offense took place within the State of
Texas.  Appellant relies entirely on P.C.=s testimony that
she did not know Aexactly@ where appellant
lived.[1] 
Although P.C. lacked knowledge of the precise location of appellant=s residence, she
testified it was somewhere in Houston, Texas.  P.C.=s mother also
testified that it was her understanding that appellant lived somewhere on
Yellowstone Street in Houston.  Moreover,  appellant cites no evidence that his
home or any other location where he was alleged to have committed these acts is
outside the territorial jurisdiction of this state.  Based upon the testimony
of P.C. and her mother, we conclude that any rational trier of fact could find
beyond a reasonable doubt that the offense occurred in Texas.  See Lane v.
State, 174 S.W.3d 376, 387 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d) (finding that the evidence was legally
and factually sufficient to show that the elements of the offense of aggravated
sexual assault occurred in Texas, where child complainant testified that some
of the assaults occurred at defendant=s home, and some
at her mother=s home, both of which were located in Texas, and defendant
cited no evidence to prove that his home was outside of Texas).  Accordingly,
we conclude that the evidence is legally sufficient to support appellant=s conviction, and
we overrule appellant=s third issue. 

B.      Factual
Sufficiency                   

When reviewing the factual sufficiency of the evidence to
support a conviction, we view all the evidence in a neutral light, favoring
neither party.  See Watson v. State, 204 S.W.3d 404, 408 (Tex. Crim.
App. 2006).  We then ask whether the evidence supporting the conviction,
although legally sufficient, is nevertheless so weak that the fact‑finder=s determination is
clearly wrong and manifestly unjust or whether conflicting evidence so greatly
outweighs the evidence supporting the conviction that the fact‑finder's
determination is manifestly unjust. Id.; Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we
must determine, with some objective basis in the record, that the great weight
and preponderance of all the evidence, though legally sufficient, contradicts
the verdict.  Watson, 204 S.W.3d at 408.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@ Id. at
410.  An appellate court cannot conclude that a conviction is Aclearly wrong@ or Amanifestly injust@  simply because
it would have decided the case differently than the jury or because it
disagrees with the jury=s resolution of a conflict in the
evidence.  Id.  We may not simply substitute our judgment for the
judgment of  the fact‑finder.  Cain v. State, 958 S.W.2d 404, 407
(Tex. Crim. App. 1997).  We must give due deference to the fact‑finder=s determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id.  In
addressing factual sufficiency, the reviewing court generally  includes a
discussion of the most important and relevant evidence that supports the
appellant=s complaint on appeal. Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App.2003).  Moreover, a court reversing and remanding on
factual insufficiency grounds must detail all the evidence and clearly state
why the finding in question is factually insufficient and under which ground.  Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001). 

Complainant=s Credibility

        
In his second issue, appellant contends that the evidence is factually
insufficient to support his conviction because P.C.=s testimony lacked
credibility.  To support this argument, appellant urges that P.C.=s testimony was
not corroborated by any other witness, or by any physical evidence, and thus
her testimony was not credible.  This alleged lack of credibility, appellant
argues, renders the evidence supporting his conviction factually insufficient. 
Appellant contends that P.C.=s behavioral problems and moodiness are
merely characteristics of any typical teenage girl. Appellant further states
that P.C.=s testimony is contrary to his statements denying the
sexual assaults.  P.C. testified that on August 1, 2003, when she was fifteen
years old, appellant sexually assaulted her on his living room floor.  The
testimony of the child complainant alone is sufficient to support a
conviction.  Tex. Code Crim. Proc. Ann. Art. 38.07(A) (Vernon Pamph. Supp.
2004).  In this case, however, P.C.=s mother offered
evidence that supported P.C.=s account of the incidents in that she
testified that P.C. spent the night at appellant=s home on that
date, and thereafter refused to see him again.  Though appellant denied P.C.=s allegations, the
jury was free to weigh the contradictory testimony provided by P.C. and choose
to believe it and not believe appellant=s denial.  We
conclude that the evidence is factually sufficient to support appellant=s conviction, and
we overrule appellant=s second issue.

Commission of Offense Within the State of Texas








In his fourth issue, appellant
contends that the evidence is legally insufficient because the State failed to
prove that any element of the charged offense took place within the State of
Texas. According to appellant, P.C.=s lack of knowledge of Aexactly@ where he lived renders the evidence factually insufficient to support
his conviction.  For the same reasons as discussed above in relation to
appellant=s legal-sufficiency challenge to
proof of this element, we conclude that the evidence is factually sufficient to
show that the offense was committed in the State of Texas.  Contrary to
appellant=s apparent belief, the State was
not required to show the exact address where the sexual assault occurred.  The
State demonstrated by the testimony of P.C. and P.C.=s mother that appellant resided in
Houston, Harris County, Texas, and that the assault took place at his
residence.  In viewing all the evidence in a neutral light, we cannot conclude
that the evidence is so weak on this point that the fact‑finder=s determination is clearly wrong or
manifestly unjust.  See Johnson, 23 S.W.3d at 11.  Therefore, we
overrule appellant=s fourth issue.

 

Having overruled all of appellant=s issues, we affirm the trial court=s judgment. 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 2, 2007.

Panel consists of
Justices Anderson, Fowler, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 

          









[1]  Appellant also states that the investigating officer
was unable to ascertain where appellant resided at the time in question. 
Appellant cites us to page volume 4, page 128 of the reporter=s record.  This portion of the record does not state
that the investigating officer was unable to ascertain where appellant lived,
but only that he never went to the scene of the offense,  which the officer
explained, is not unusual in a case with a delayed outcry.